**Betty Ann LAWS, Plaintiff-Appellant,**

**v.**

**Bernard LEE, Paul T. Insley, Jr., James Don Poling, Harold Skelton, and Dewey White, as Members of the Board of Trustees of the Town of Rockville, Indiana, and Pauline McKinney; James D. Berry; Lewis Craft; and Ann Craft; and Stanley Skelton, as Superintendent and Building Inspector of the Town of Rockville, Indiana; and Harold Richey, Walter Gibbs, Gerald Gooch, Lester Jones and Bernard Lee, as Members of the Rockville Board of Zoning Appeals, Defendants-Appellees.**

**No. 1–1183A360.**

Court of Appeals of Indiana,
First District.

Dec. 20, 1984.

Rehearing Denied Jan. 29, 1985.

Mark D. Hassler, Wolfe, Frey, Hunt & Olah, Terre Haute, for plaintiff-appellant.

James A. Bruner, Rockville, for Pauline McKinney.

John R. Kenley, Kenley & Kenley, Rockville, for Bernard Lee, Paul T. Insley, Jr., James Don Poling, Harold Skelton, and Dewey White, as Members of the Bd. of Rockville, Ind.; Stanley Skelton, as Superintendent and Building Inspector of the Town of Rockville, Ind.; and Harold Richey, Walter Gibbs, Gerald Gooch, Lester Jones, and Bernard Lee, as Members of the Rockville Bd. of Zoning Appeals.

RATLIFF, Judge.

## STATEMENT OF THE CASE

The appellant, Betty Ann Laws, appeals the judgment of the trial court determining that her neighboring land owners' use of their property conformed to the 1970 Town of Rockville Zoning Ordinance. We reverse.

## FACTS

Betty Ann Laws (Laws) is the owner of lot 10 in Rosewood Addition, Town of Rockville, Indiana. The uses being contested on appeal involve lots 11 and 2 also in the Rosewood Addition. All three lots are zoned in a residential district classified as R–3.

Lot 11 is owned by Pauline McKinney who has allowed certain mobile homes to be placed on her property. In 1981 Laws began to complain about the presence of a mobile home on the McKinney property. This first mobile home was removed in May, 1982 but in July, 1982, another mobile home, owned by Frederick Beagle, was placed on the McKinney lot.

Lot 2 was purchased by Lewis and Ann Craft in 1978. When purchased, Lot 2 contained a mobile home which had been placed there prior to the passage of the 1970 ordinance. After purchasing the lot, the Craft's removed the existing mobile home and put their Wilderness travel trailer in its place.

Laws complained to both the president of the zoning board and the building inspector about the misuse of lots 11 and 2. When her complaints did not yield favorable results, she filed a civil suit requesting an injunction and a writ of mandamus to force the zoning and Town of Rockville officials to enforce the 1970 ordinance which Laws believed excluded mobile homes from residential districts.

After various motions for summary judgment, the appellees [1] filed a motion to dismiss on the grounds that Laws had not exhausted her administrative remedies. Because Laws' complaints had not been formally submitted to the board of zoning appeals, the trial judge dismissed the suit stating exhaustion of administrative remedies was a prerequisite to a judicial determination.

Laws then took her complaints to the board of zoning appeals (board) for a determination. The board found against Laws on the alleged zoning violations by McKinney and the Crafts. The main issue involved the size of the Beagle mobile home and Craft travel trailer. The ordinance required that all dwellings in R–3 residential district have at least 900 square feet of ground floor area. The board determined the Beagle mobile home complied since the manufacturer's specifications showed an area of 910 square feet. The issue regarding the Craft travel trailer involved its length. The Crafts had to show it was at least 30 feet long. The board, again basing its determination on the manufacturer's specifications, found the travel trailer complied because it was 31 feet in length.

After the board's decision, Laws went back to the trial court. She supplemented the evidence submitted during the board's hearing by introducing actual measurements of the Beagle mobile home and Craft travel trailer. According to Laws, the Beagle mobile home measured 910 square feet if the hitch or tongue was included. Excluding the tongue or hitch it was only 845 square feet. Also, the Craft travel trailer exceeded 30 feet, once again, only when the hitch or tongue was included. Laws' measurements excluding the hitch or tongue established the travel trailer was only 28 feet, 4 inches long. The trial court recognized this evidence in its findings of fact but still concluded that the mobile home on lot 11 and travel trailer on lot 2 substantially complied with the ordinance. Laws appeals this conclusion.

## ISSUES

Restated, the issues presented are as follows:

1. Did the trial court err by concluding that the Beagle mobile home, placed on the McKinney property, substantially complied with the Rockville Zoning Ordinance?

2. Did the trial court err by concluding that the Craft travel trailer could properly replace the existing mobile home on lot 2?

**1.** Because all the parties opposing Laws' action have presented similar arguments on appeal, they are referred to collectively as the appellees throughout this opinion.

3. Did the trial court err by not issuing a writ of mandamus?

## DISCUSSION AND DECISION

*Issue One*

Laws first argues that the ordinance prohibits the Beagle mobile home from being placed on lots in residential districts. The appellees respond by arguing the ordinance contemplates a means whereby a structure can cease being a mobile home and become a stationary home. The board and trial court apparently agreed. Relying on the ordinance's definition of "dwelling," the board concluded that by removing a mobile home's undercarriage and placing it on a foundation with concrete steps at the entrance, the mobile home would become a "dwelling." Therefore, the Beagle home would become a dwelling if these modifications were made and could remain in the area zoned R–3.

We need not address this interpretation of the ordinance because our decision is based on another provision in the ordinance. The zoning ordinance required all dwellings in a R–3 district to have at least 900 square feet of ground floor area. "Minimum Floor Area: Residential Uses. No dwelling may be established, erected or changed so that its ground floor area, in square feet, is less than that prescribed by the following table." Record at 334 P. 84. The table referred to in the above section establishes that R–3 dwellings must have at least 900 square feet of ground floor area. Therefore, even if the mobile home could become a dwelling, it would still have to comply with the ground floor area provision.

The parties disagree on the ground floor area of the Beagle home. The trial court established in its findings of fact that the manufacturer's specifications stated the home measured 910 square feet. Laws, however, submitted evidence obtained from an actual measurement which showed the

home measured only 845 square feet. This evidence was also recognized by the trial court in its findings of fact.

"7. Manufacturer's specifications of dimensions of the Beagle mobile home are 14 feet by 65 feet or 910 square feet which dimensions include the tongue of the mobile home.

8. Absent the tongue, the measured dimensions of the Beagle mobile home are 13 feet 9 inches by 61 feet 6½ inches or approximately 845 square feet."

Record at 334 P. 22. From these findings of fact the court concluded the home substantially complied with the ordinance. We disagree with the trial court's judgment.

 The trial court erred by basing its conclusion on the measurement which included the tongue or hitch in the calculation. On appeal this court treats the lower court's decision the same as it would any other civil appeal. Indiana Code section 36–7–4–1011.[2] The trial court entered special findings pursuant to Indiana Rules of Procedure, Trial Rule 52. Our scope of review in such a case allows us to determine whether the law was correctly applied to the facts. *Paul Revere Life Insurance Co. v. Gardner,* (1982) Ind.App., 438 N.E.2d 317. In the present case, the trial judge determined that the Beagle home "substantially complied" with the ordinance. However, an ordinance must be interpreted as it is written and a reviewing tribunal is not free to go beyond its terms. *Board of Zoning Appeals of Elkhart County v. New Testament Bible Church, Inc.,* (1980) Ind.App., 411 N.E.2d 681, 683. The Rockville ordinance is very clear. All dwellings in a R–3 district must have at least 900 square feet of ground floor area. The trial court's conclusion of substantial compliance was legally correct only if this requirement was met. Furthermore, looking to the trial court's findings, it is obvious that the requirement was met only if the correct measurement of ground floor area includes the hitch or tongue.

---

**2.** The appellant raises an issue regarding whether the trial court conducted a trial *de novo* or merely reviewed the board's findings. In light

of Ind.Code § 36–7–4–1011, this issue is irrelevant to our decision.

We believe the proper calculation of ground floor area should exclude the hitch or tongue. The controlling finding of fact is number 8 which establishes a ground floor area of 845 square feet when excluding the hitch or tongue. Our determination is supported by the ordinance itself. Ground floor area is defined in the ordinance as follows: "GROUND FLOOR AREA—The square foot area of a residential building within its largest outside dimensions computed on a horizontal plane at the ground floor level, exclusive of open porches, breeze-ways, terraces, garages, exterior and interior stairways." Record at 334 P. 66. This section indicates only living area is included in the calculation of the ground floor area. It would be inconsistent to include the hitch or tongue of a mobile home in the measurement of floor area when porches, terraces, garages, and breeze-ways are expressly excluded from the measurement. Furthermore, the terms used to describe the section refer to ground *floor* area. We are convinced that the area of the hitch or tongue should be excluded from the measurement simply because it does not represent the floor area in the mobile home. Therefore, the correct measurement was 845 square feet of ground floor area which is, obviously, below the minimum requirement in the ordinance. The Beagle mobile home does not comply with residential zoning requirements.

The appellees argue the trial judge went beyond his authority by making the factual finding that the floor area was only 845 square feet without the hitch. They contend that as a court of review,[3] the trial court was required to accept the board's finding that the floor area was 910 square feet. However, Indiana Code section 36-7-4-1009 allows the trial court to supplement the evidence contained in the record of the board's hearing. As long as the new evidence pertains to a subject upon which evidence was submitted during the board's hearing, then the new evidence is considered supplemental and may be considered by the trial court. *Metropolitan*

*Board of Zoning Appeals v. Gateway Corp.,* (1971) 256 Ind. 326, 268 N.E.2d 736. The board's findings were based solely on the manufacturer's specifications which showed the home was 910 square feet. The trial court went further by accepting evidence of the actual measurement of the home. Both the manufacturer's specifications and the actual measurement addressed the same subject; the area of the mobile home. Therefore, the actual measurement was supplemental evidence and proper for consideration by the trial court.

The appellees also argue that an Improvement Location Permit issued to Beagle authorized him to place the mobile home in the residential district. This argument, however, fails when the zoning ordinance is examined. The following provisions govern issuance of Improvement Location Permits:

"ARTICLE 1. IMPROVEMENT LOCATION PERMITS

Within the jurisdiction of the Commission, no structure or improvement or use of land, may be altered, changed, placed, erected or located on platted or unplatted lands, unless the structure, improvement or use, and its location, conform with the Master Plan and Ordinance of the Town, and an Improvement Location Permit for such structure, improvement or use has been issued.

ARTICLE 2. WRITTEN APPLICATION REQUIRED

The Building Commissioner shall issue an Improvement Location Permit upon written application, when the proposed structure, improvement, or use and its location conform in all respects to the Master Plan of the Town."

Record at 334 P. 150. Obviously, a prerequisite to the issuance of a permit is compliance with the Master Plan. The Master Plan includes the zoning ordinance. Record at 334 P. 128–29. If the Beagle mobile home did not comply with the zoning ordinance, as we have already determined, then it did not comply with the

---

**3.** See footnote 2 *supra.*

Master Plan. Such noncompliance renders any Improvement Location Permit invalid. The permit could not have authorized placing the Beagle mobile home on lot 11.

 The appellees maintain that the validity of the Improvement Location Permit may not be challenged because Laws failed to exhaust administrative remedies. Individuals, adversely affected by a building commissioner's decision regarding the issuance of permits, may appeal the decision to the board of zoning appeals. Furthermore, Indiana Code section 36–7–4–918(b)(2) grants a board of zoning appeals the authority to "hear and determine appeals from and review any order, requirement, decision or determination made by an administrative official ...." We agree with the general statement of the law that where "an administrative remedy is provided, it must be exhausted before judicial review may be requested." *City of East Chicago v. Sinclair Refining Co.*, (1953) 232 Ind. 295, 306, 111 N.E.2d 459, 464. However, in *Fidelity Trust Co. v. Downing*, (1946) 224 Ind. 457, 68 N.E.2d 789, the supreme court restricted the exhaustion prerequisite to only those individuals directly affected by a public official's decision regarding the issuance of building permits. In *Fidelity Trust* a building permit was issued and construction begun when another party brought suit to enjoin the erection of the building on grounds that its construction violated local zoning provisions. The parties erecting the building argued that anyone challenging their right to build had to first appeal the issuance of the building permit thereby exhausting administrative remedies. The court rejected this argument stating that to require exhaustion would be to require that every landowner take notice of every building permit issued. *Id.* at 463, 68 N.E.2d at 791. Similarly, Laws was not directly affected by the issuance of the permit to Beagle. *Id.* Rather, she was a neighboring landowner who could not be expected to be aware of the permit's issuance. The appellant's challenge to the permit's validity is not barred by her failure to exhaust administrative remedies. *See* 82 Am.Jur.2d *Zoning and Planning* § 332 at 904.

*Issue Two*

The next issue involves the placement of the travel trailer on lot 2 by the Crafts. In 1965 a mobile home was placed on lot 2 which measured 46 by 10 feet. Because this predated the 1970 ordinance, this particular mobile home could remain on lot 2 despite its nonconformity. In 1978 the Crafts replaced this mobile home with a travel trailer. The substitution of a prior nonconforming use with another nonconforming use was closely regulated by the ordinance. Section 24(B) stated:

"A nonconforming use may be changed to another nonconforming use of the same or greater restrictions, provided no structural changes are made in the building. Whenever a nonconforming use has been changed to a conforming use or to a use permitted in a district of greater restrictions, it shall not thereafter be changed to a nonconforming use of a less restricted one. *In the event a mobile home exists on a site, it may be replaced by another mobile home of equal condition or value, provided there is no change of use.* [Emphasis supplied.]"

Record at 334 P. 118. Laws calls our attention to the emphasized portion, which the parties apparently agree applies because the Crafts wish to replace a mobile home with a travel trailer. This provision allows the replacement of a nonconforming mobile home with another similar mobile home. Laws' argument is quite simple. She contends that the Crafts' travel trailer is not a "mobile home" as defined in the ordinance.

The parties agree that the ordinance defines a mobile home as being at least 30 feet in length. The manufacturer's specifications show the travel trailer is 31 feet long. However, Laws presented evidence to the trial court which showed the actual length excluding the hitch or tongue was 28 feet, 4 inches. Because it falls short of the required 30 feet, Laws concludes it is not a mobile home and may not replace the

previous nonconforming mobile home. Therefore, the Craft travel trailer should be removed from the residential district because its presence violates the ordinance. We agree.

■■■■ The trial court's findings of fact recognized both measurements.

"19. The manufacturer's specifications for the Craft mobile home disclosed that its length is 31 feet including its tongue.

20. With the tongue removed, the length of the Craft mobile home is 28 feet 4 inches."

Record at 297. As in the first issue, we must determine whether the tongue or hitch should be included when measuring a mobile home. Nothing in the ordinance reveals what is to be included in the length of a mobile home. However, we believe it would be illogical to include anything extending beyond the actual living area. This interpretation is supported by the federal regulations governing the measurement of a mobile home's length.

"13. 'Length of a Manufactured Home'[4] means its largest overall length in the traveling mode, including cabinets, and other projections *which contain interior space. Length does not include bay windows, roof projections, overhangs, or eaves under which there is no interior space, nor does it include drawbars, couplings or hitches.* [Emphasis supplied.]"

24 C.F.R. § 3280.2(13) (1984). We believe the correct measurement of a mobile home's length should exclude the hitch or tongue. The travel trailer, as found by the trial court measured only 28 feet, 4 inches in length. Therefore, the Crafts' travel trailer did not meet the definitional requirements of a mobile home under the ordinance and may not replace the previous mobile home under section 24(B).

*Issue Three*

A final issue raised by Laws involves the appropriate relief. In her complaint, Laws requested an injunction to prevent the continued violation of the ordinance as well as a writ of mandamus requiring the town of Rockville officials to enforce the ordinance. On appeal, Laws contends that the trial court erred by not granting the writ.

■■■■ Although we have held the zoning ordinance prohibits the placement of the Craft and Beagle dwellings in a residential district, mandamus is not the appropriate remedy. Mandamus is an extraordinary remedy and viewed by our supreme court with disfavor. *State ex rel. Civil City of South Bend v. Court of Appeals of Indiana-Third District,* (1980) 273 Ind. 551, 406 N.E.2d 244. Such relief should be granted only where other remedies are inadequate. 52 Am.Jur.2d *Mandamus* § 164 at 486. The injunctive relief requested by Laws is clearly adequate because it will enable the trial court to eradicate the zoning violations. Therefore, the judgment of the trial court is reversed and we remand to the trial court with instructions to enter the injunction requested.

Judgment reversed and remanded.

NEAL, P.J., and ROBERTSON, J., concur.

---

**4.** A "manufactured home" is defined in a later section in terms which would include a mobile home. 24 C.F.R. 3280.2(16) (1984).