Benjamin R. ROSS and Debbie Ross, Husband and Wife, and the City of Michigan City, Appellants–Defendants,

v.

Jack HARRIS, et al., Appellees–Plaintiffs.

No. 46A04–0509–CV–514.

Court of Appeals of Indiana.

Dec. 5, 2006.

Publication Ordered Jan. 16, 2007.

Jennifer L. Evans, Michigan City, IN, Attorney for Appellants.

Hugo E. Martz, Valparaiso, IN, Attorney for Appellees.

## OPINION

HOFFMAN, Senior Judge.

Defendants–Appellants Benjamin and Debbie Ross and the City of Michigan City appeal the trial court's order 1) finding that the City's issuance of a permit to the Rosses to build a second-story addition and an attached 55–foot tall structure to their existing home violates a city zoning ordinance; 2) granting the motion for a mandatory injunction filed by Plaintiffs–Appellants Jack Harris and all others similarly situated, (collectively "Harris"), and 3) ordering the Rosses to remove that portion of the 55–foot tall addition to their home that exceeds the 30–foot height limitation the zoning ordinance imposes on residential structures.

The Rosses and the City of Michigan City raise the following two issues:

I. Whether the trial court erred in failing to dismiss Harris' complaint for lack of subject matter jurisdiction; and

II. Whether the trial court erred in finding that the City's issuance of a permit to the Rosses to build a second-story addition and an attached 55–foot tall structure to their existing home violates a city zoning ordinance and granting the mandatory injunction ordering the Rosses to remove that portion of their 55–foot tall addition that exceeds the 30–foot height limitation a Michigan City zoning ordinance imposes on residential structures.

We affirm.[1]

In June 2004, the Rosses filed an application for a building permit with the City of Michigan City wherein they sought permission to construct a second-floor addition and "OS Tower" at their Sheridan Beach residence. Volume of Exhibits, Plaintiff's Exhibit A. The City granted the permit, and the Rosses began construction on their project. The neighbors soon became concerned about the height and safety of what they realized would be a 55–foot tall addition to the Rosses' home.

In the early spring of 2005, several neighbors shared their concerns with Mr. Ross that his addition would block their views of Lake Michigan and lower their property values. Mr. Ross told one of the neighbors that he had obtained a permit for his addition by doing his own research and "finding, for lack of a better word, a loop hole...." Transcript, pp. 251–52. Mr. Ross further responded to his neighbors' concerns by accelerating work on the project. In June 2005, the neighbors filed a request for a temporary restraining order, which the trial court denied. The neighbors then filed a request for a preliminary injunction. By the date of the hearing on that request, the Rosses had completed the addition to their home.

The neighbors subsequently asked the trial court to issue an injunction ordering the Rosses to remove that portion of their addition that exceeds the 30–foot high limitation that Michigan City Zoning Ordinance Section 160.044(D) imposes on residential structures. The Rosses and the City of Michigan City responded that the trial court should dismiss the claim for lack of subject matter jurisdiction because Harris failed to exhaust his administrative remedies before the Board of Zoning Appeals. They also argued that if the court did not dismiss the claim, it should rule in their favor because the Rosses' addition was a "tower" and Zoning Ordinance Sec-

1. We deny Harris' motion for oral argument.

tion 106.010(D) includes a tower exception to the Section 160.044(D) 30–foot height requirement.

After hearing evidence in a four-day bench trial, the court 1) found that it had subject matter jurisdiction over the case and 2) granted Harris' motion for a mandatory injunction. The Rosses and the City of Michigan City appeal.

■ The Rosses and the City argue that the trial court erred in failing to dismiss Harris' complaint for lack of subject matter jurisdiction. Specifically, they contend that Harris failed to exhaust his administrative remedies before filing suit.

*Bixler v. LaGrange County Building Department,* 730 N.E.2d 818 (Ind.Ct.App. 2000) is dispositive. There, the LaGrange County Building Department granted Stanley and Doris High a permit to place their manufactured home on their Fish Lake lot. The Bixlers, who were adjoining landowners, filed a complaint against both the Highs and the Building Department. Specifically, the Bixlers alleged that the Highs' manufactured home was a mobile home that could only be located in a mobile home park under the existing zoning classification. The trial court found that the Bixlers had failed to exhaust their administrative remedies and dismissed their complaint.

On appeal, the Bixlers claimed that they had no obligation to pursue administrative remedies enacted for the benefit of permit applicants. This court noted that the exhaustion prerequisite has historically been restricted to permit applicants, who are directly affected by a public official's decision to issue, condition, or deny building permits. We further noted that in *Laws v. Lee,* 471 N.E.2d 1229, 1234 (Ind.Ct.App. 1984), we discussed the rule set forth as follows in *Fidelity Trust Co. v. Downing,* 224 Ind. 457, 68 N.E.2d 789 (1946):

In *Fidelity Trust* a building permit was issued and construction begun when another party brought suit to enjoin the erection of the building on grounds that its construction violated local zoning provisions. The parties erecting the building argued that anyone challenging their right to build had to first appeal the issuance of the building permit thereby exhausting administrative remedies. The court rejected this argument stating that to require exhaustion would be to require that every landowner take notice of every building permit issued. Similarly, Laws was not directly affected by the issuance of the permit to Beagle. Rather, she was a neighboring landowner who could not be expected to be aware of the permit's issuance. The appellant's challenge to the permit's validity is not barred by her failure to exhaust administrative remedies.

(Citations omitted).

This court concluded that the Bixlers' position was precisely that of the plaintiff in *Laws.* The Bixlers were property owners who were not responsible for monitoring the issuance of permits for which they had not applied. Although they could have initiated an appeal to the zoning board, they were not required to do so, and their challenge to the validity of the permit was not barred by failure to exhaust administrative remedies. *Bixler,* 730 N.E.2d at 821. We therefore reversed the trial court's dismissal of the Bixlers' complaint for lack of jurisdiction. *Id.*

Here, Harris' position is precisely that of the Bixlers. Harris was not responsible for monitoring the issuance of permits for which he had not applied. Although he could have initiated an appeal to the zoning board, he was not required to do so, and his challenge to the validity of the Ross' building permit was not barred by a failure to exhaust administrative remedies.

The trial court did not err in failing to dismiss Harris' complaint for lack of jurisdiction.

■ The Rosses and the City also argue that the trial court erred in granting Harris' motion for a mandatory injunction and ordering the Rosses to remove that portion of the 55–foot tall addition to their home that exceeds the 30–foot height limitation the zoning ordinance imposes on residential structures. The grant or denial of an injunction lies within the sound discretion of the trial court, and we will not reverse the court's decision unless the court abused its discretion. *Ferrell v. Dunescape Beach Club Condominiums Phase I, Inc.*, 751 N.E.2d 702, 712 (Ind.Ct.App. 2001). The trial court considers four factors in determining the propriety of injunctive relief: 1) whether plaintiff's remedies at law are inadequate; 2) whether the plaintiff has succeeded on the merits; 3) whether the threatened injury to the plaintiff outweighs the threatened harm a grant of relief would occasion upon the defendant; and 4) whether the public interest would be disserved by granting relief. *Id.* at 712–13.

■ Here, the only factor that the Rosses and the City challenge is whether Harris succeeded on the merits. Specifically, they argue that the trial court erroneously found that both the city's issuance of the building permit and the Rosses' construction of the 55–foot tall addition violated the ordinance. Both appealing parties contend that the trial court improperly construed the ordinance. Specifically, the Rosses and the City both contend that the Rosses' 55–foot tall "observation tower" is an exception to 30–foot height requirement for residential structures found in Zoning

Ordinance Section 160.044(D). Harris, on the other hand, argues that the Rosses' addition is not a tower as contemplated by this exception. Rather, according to Harris, the "addition is nothing more than another room of the house, 55 feet in the air, sticking up 25 feet above the rest of the house. The Rosses are simply using the word 'tower' in an attempt to circumvent the [residential] height restriction of 30 feet." Appellant's Brief at 5.

■ The Rosses' 55–foot addition consists of a stairway enclosed in a square concrete-block enclosure with sides that measure almost 13 feet across. The stairway goes up 40 feet to an octagonal room that measures 25–feet across and ten-feet from the floor to the top of its mansard roof. The room is enclosed with windows, sliding glass walls, and patio doors that provide access to a 3'9" wrap-around walkway. Resolution of whether this structure is a tower exception to the 30–foot height requirement for residential structures requires us to interpret Michigan City Zoning Ordinance Section 160.010(D)(1), which provides as follows:

> No structure shall be erected, converted, enlarged, reconstructed, or structurally altered to exceed the height limit herein established for the district in which the structure is located,[2] except that penthouses or roof structures for the housing of elevators, stairways, tanks, ventilating fans, or similar equipment required to operate or maintain the structure, and fire or parapet walls, skylights, towers, steeples, flagpoles, chimneys, smokestacks, radio and television aerials, wireless masts, electric and telephone service poles, water tanks, silos, storage hoppers, elevators or similar structures may be erected above the height limits

---

2. The Rosses' structure is located in an R2 residential district. Zoning Ordinance Section 160.044(D) provides that the maximum height of buildings and structures in an R2 district is 30 feet.

herein described. No structure shall be erected to exceed by more than twenty-five feet the height limits of the district in which it is located.

The rules of statutory construction are to be applied in construing an ordinance. *Kaser v. Barker*, 811 N.E.2d 930, 932 (Ind. Ct.App.2004), *trans. denied.* We review the construction of statutes de novo, giving no deference to the trial court's interpretation because the interpretation of a statute is a question of law. *Id.* We independently review the statute's meaning and apply it to the facts of the case under review. *Id.*

The primary goal of statutory interpretation is to give effect to the intention of the legislature. *Hatcher v. State*, 762 N.E.2d 170, 172 (Ind.Ct.App.2002), *trans. denied.* This is accomplished by examining the statutory language. *Id.* Words in a particular section of the statute may not be construed in isolation but must be viewed in the context of the entire act. *Id.* We presume the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policies and goals. *Id.*

Here, Zoning Ordinance Section 160.010, which includes the tower exception to the residential height requirement, is entitled "Control over Bulk." Bulk is the "term used to indicate the size and setback of buildings or structures, and their location with respect to one another, and includes the size and height of buildings, the location of exterior walls, the floor area ratio, the open space allocated to buildings, and the lot area and lot width." Zoning Ordinance Section 160.005.

The Ordinance contains a variety of restrictions designed to control the bulk of structures in residential areas. For example, the ordinance includes standards that govern minimum lot size and square footage of homes as well as establish minimum setback lines from streets and adjoining properties. *See* Zoning Ordinance Section 160.044. In addition, as previously noted, the ordinance restricts the height of buildings in residential districts.

The Michigan City Common Council has explained that the "basic standards for development and the density premiums for the provision of open space are designed to encourage the development of homes and housing projects which will provide healthy, attractive, and stable neighborhoods." Zoning Ordinance Section 160.040. This policy in conjunction with the significant regulation of the bulk in residential neighborhoods, leads us to conclude that the Michigan City Common Council did not intend for the tower exception in Section 160.010(D) to include structures such as the Rosses' addition to their home.

Further, the canon of construction known as *noscitur a sociis* provides that the meaning of a doubtful word may be determined in reference to its relationship with other associated words and phrases. *Wiggins v. State*, 727 N.E.2d 1, 7 (Ind.Ct. App.2000), *trans. denied.* This maxim means "it is known from its associates" and in practical application means that a word may be defined by an accompanying word, and ordinarily the coupling of words denotes an intention that they should be understood in the same general sense. *Id.*

Here, the City of Michigan City Common Council set forth in Section 160.010(D)(1) a list of structures that are permitted to exceed height limitations in all zoning districts. These structures include penthouse or roof structures for the housing of elevators, stairways, tanks, ventilating fans, or similar equipment required to operate or maintain the structure as well as fire walls, skylights, steeples, flagpoles, smokestacks, aerials, wireless masts, service poles, water tanks, and silos, none

of which are habitable structures. The Rosses' addition, however, bears no relation to the functional use of their residence, and the addition is a habitable structure.

Further, where words are used at one place in an Act, they will be construed as used in the same sense at other places in the Act, unless the clear context of the statute requires a different meaning. *State ex rel Gary Taxpayers' Association, Inc. v. Lake Superior Court,* (1947) 225 Ind. 478, 490, 76 N.E.2d 254, 260 *overruled in part on other grounds.* Also, statutes relating to the same general subject matter are *in pari materia* and should be construed together to produce a harmonious statutory scheme. *Fuller v. State,* 752 N.E.2d 235, 238 (Ind.Ct.App.2001). *See also Erlenbaugh v. U.S.,* 409 U.S. 239, 93 S.Ct. 477, 34 L.Ed.2d 446 (1972) (explaining that the "[r]ule of *in pari materia* is a reflection of practical experience in the interpretation of statutes: a legislative body generally uses a particular word with consistent meaning in a given context.").

Here, the ordinance discusses, describes and defines towers exclusively in the context of those that are used for radio, television, and commercial communication. *See* Zoning Ordinance Section 160.021. For example, the ordinance defines alternative tower structure as including "man-made trees, building walls, clock towers, bell steeples, light poles and similar alternative design mounting structures that camouflage or conceal the presence of commercial communication towers and antennas." Zoning Ordinance Section 160.021(A)(1).

The ordinance also defines 1) antenna tower as a "vertical structure which supports an antenna or antennae in an elevated position;" 2) commercial communication tower as a "structure other than a building, such as a monopole, self-supporting or guyed tower, designed and used to support commercial communications antennas;"

and 3) a public utility transmission tower as a "structure, owned and operated by a public utility electric company regulated by the Indiana Public Utility Commission, designed and sued to support overhead electrical lines." Zoning Ordinance Section 160.021(A)(3), (6), and (11).

In addition, the ordinance explains in Section 160.021(A)(9) that the "overall height of the tower [is] from the base of the tower to the highest point of the tower, including, but not limited to, antennas, transmitters, satellite dishes or any other structures affixed to or otherwise placed on the tower...." Lastly, ordinance Section 160.021(B)(2)(f) limits antenna towers to a maximum cross center area not to exceed 12 square feet for vertical structures, and Section 160.021(D)(1) bans commercial communication towers and antennas from residential districts. All of the towers discussed in the ordinance are communication towers. None of the towers defined or described in the ordinance defines or describes the addition to the Rosses' home, which is 169 square feet.

Lastly, in construing statutes we will presume that the legislature intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Doe v. Donahue,* 829 N.E.2d 99, 107 (Ind.Ct.App.2005), *trans. denied.* Here, Zoning Ordinance Section 160.02 1(D)(2)(3) provides that an applicant for a permit to erect a commercial communications tower must perform a visual impact analysis that includes all feasible mitigation measures necessary to mitigate any negative visual impact by the proposed tower. The analysis must also include an analysis of alternative tower structure design and color schemes. It would be both an unjust and absurd result to require applicants for commercial communications to perform such an in-depth visual impact analysis on a tower that is banned from a residential district and to require nothing

similar from a permit applicant who wishes to construct a 55–foot observation tower that blocks neighbors' views of Lake Michigan and decreases neighbors' property values in a residential district.

Based upon the foregoing, it is clear that the Michigan City Common Council did not intend for the tower exception in Section 160.010(D) to include structures such as the Rosses' addition to their home. In fact, the Rosses' addition is clearly the very type of structure that the zoning ordinance was enacted to prevent. The trial court did not err in interpreting the ordinance or in granting the mandatory injunction ordering the Rosses to remove that portion of their 55–foot addition that exceeds the 30–foot height limitation that the ordinance imposes on residential structures.

Affirmed.

RILEY, J., and CRONE, J., concur.

### ORDER

On December 5, 2006, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellees, by counsel, have filed a Motion to Publish. The Appellees state that this case should be published because it has met the criteria as set out in Ind. Appellate Rule 65(A)(1), (3).

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellees' Motion To Publish Is GRANTED, and this Court's opinion heretofore handed down in this cause on December 5, 2006, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

All Panel Judges CONCUR.