

IN THE

# Indiana Supreme Court

Supreme Court Case No. 24S-PL-287

## Willow Haven on 106th Street, LLC,
*Appellant*,

—v—

## Hari Nagireddy and Saranya Nagireddy,
*Appellees*.

Argued: October 2, 2024 | Decided: February 19, 2025

Appeal from the Hamilton Superior Court
No. 29D02-2207-PL-5323
The Honorable Matthew Kincaid, Special Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-PL-2931

**Opinion by Justice Slaughter**

Chief Justice Rush and Justices Massa, Goff, and Molter concur.



FILED
Feb 19 2025, 11:25 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**Slaughter, Justice.**

This is a nuisance suit between neighboring property owners in Carmel, Indiana. The plaintiffs, Hari and Saranya Nagireddy, live next door to property owned by defendant, Willow Haven on 106th Street, LLC. Willow Haven is developing its property to house up to ten residents with Alzheimer's disease and dementia. After Willow Haven obtained a building permit from Carmel, the Nagireddys sued, seeking a declaration that Willow Haven's proposed use of its property would be a public nuisance because it would violate Carmel's unified development ordinance. The Nagireddys also sought and obtained a preliminary injunction against further construction of the home, which the court of appeals affirmed.

We granted transfer and now hold the injunction is improper. The Nagireddys did not prove they are likely to win their public-nuisance claim, which alleges that Willow Haven's proposed land use is illegal because it would violate Carmel's ordinance. At this preliminary stage, the Nagireddys did not make this showing under the ordinance. We reverse the trial court, vacate the injunction, and remand for further proceedings.

I

A

The neighborhood where the Nagireddys live and Willow Haven owns property is zoned for single-family residences under Carmel's unified development ordinance, its UDO. Willow Haven wants to build a home for persons with Alzheimer's disease and dementia. The home will have ten private bedrooms, each with its own private bath, plus a common kitchen, dining, and living space. The home will also have full-time staff: two dementia-certified caregivers will provide round-the-clock care; an operations manager will oversee their care; and an on-site chef will prepare meals.

Before breaking ground on its property, Willow Haven sought a building permit. Carmel's director of community services issued a permit in August 2021. The city did not—and did not have to—send notice to the Nagireddys that it had issued the permit to their next-door neighbor, Willow Haven.

Once the Nagireddys saw construction begin next door, they contacted Carmel and learned it had issued the permit. In June 2022, the Nagireddys wrote the city to complain. They believed that Willow Haven needed a variance from Carmel's board of zoning appeals, its BZA, to operate the home in a single-family zone. And they demanded that Carmel issue a stop-work order. The city refused, explaining it had recently approved a similar project elsewhere without requiring a zoning variance. And it determined that its UDO "could not preclude Willow Haven from constructing a home for frail elderly individuals with dementia and/or Alzheimer's Disease" because such a bar may "violate[] both state and federal law."

B

The Nagireddys sued Willow Haven and Carmel, along with the city's director of community services, his department, and the city's code-enforcement office. The Nagireddys sought a declaration that operating the home would violate the 2018 version of the UDO (which governs here because it is the version in force when Willow Haven applied for its building permit) and a preliminary and permanent injunction barring further construction. The defendants moved to dismiss under Trial Rules 12(B)(1) and 12(B)(6). They alleged (among other things) that the Nagireddys failed to exhaust administrative remedies before the BZA. The Nagireddys eventually dismissed all defendants except Willow Haven. And the trial court denied Willow Haven's motion to dismiss.

Later, in opposing the preliminary injunction, Willow Haven repeated its exhaustion argument that the Nagireddys' failure to "pursue the exclusive means for judicial review of issuance of the permit" meant "they do not have a reasonable likelihood of success in this cause, regardless of any other justification they may set forth." After a hearing, the trial court issued a preliminary injunction enjoining Willow Haven from further constructing the home. Relevant here, the trial court again found that the Nagireddys need not exhaust administrative remedies before bringing their nuisance action. And it held the Nagireddys were likely to succeed with their claim because, the court found, Willow Haven needed—but did not obtain—a variance to operate its home in that neighborhood. The court did not analyze whether state or federal law requires a different result.

Willow Haven appealed, and a divided appellate panel affirmed in a precedential opinion, *Willow Haven on 106th St., LLC v. Nagireddy*, 228 N.E.3d 481 (Ind. Ct. App. 2024). The panel majority held that "the Nagireddys were not required to exhaust administrative remedies with the BZA before pursuing declaratory and injunctive relief with the trial court." *Id.* at 489. And, it held, the Nagireddys showed they are likely to succeed on their nuisance claim because the "UDO states that an impermissible use is a public nuisance", and Willow Haven's land use "is not a permitted use under the express language of the UDO." *Id.* at 492. Willow Haven's land use is not a permitted use, the majority explained, because the UDO allows as of right only licensed "group homes", and Willow Haven's home "is not a licensed facility of any kind". *Id.* at 490.

Judge Weissmann dissented. *Id.* at 492. In her view, the UDO is ambiguous and thus "open to judicial construction." *Id.* at 493 (quoting *Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015)). To avoid the "illogical" result of the majority's reading—that state-licensed group homes are allowed under the UDO, but unlicensed group homes authorized by state law are not—she would have read the UDO to permit Willow Haven's land use and reversed the trial court. *Ibid.*

Willow Haven then sought transfer, which we granted, 241 N.E.3d 1121 (Ind. 2024), thus vacating the appellate opinion, Ind. Appellate Rule 58(A).

II

We must decide whether the trial court erred in granting the Nagireddys' request for a preliminary injunction. A preliminary injunction "is an extraordinary equitable remedy that should be granted with caution." *Combs v. Daniels*, 853 N.E.2d 156, 160 (Ind. Ct. App. 2006). We review the grant of a preliminary injunction for abuse of discretion, *Ind. Fam. and Soc. Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 161 (Ind. 2002), which "occurs if the trial court's decision was against the logic and effect of the facts and circumstances before the court", *Wisner v. Laney*, 984 N.E.2d 1201, 1205 (Ind. 2012). Another way the trial court abuses its discretion is by misinterpreting the law. *Members of Med. Licensing Bd. of Ind. v. Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky., Inc.*, 211 N.E.3d 957, 964 (Ind. 2023), reh'g denied, 214 N.E.3d 348 (Ind. 2023). When granting a

preliminary injunction, the trial court enters special findings. Ind. Trial Rule 52(A); T.R. 65(D). On appeal we must determine "whether the evidence supports the findings and, if so, whether the findings support the judgment." *Town of Linden v. Birge*, 204 N.E.3d 229, 233 (Ind. 2023). We review the trial court's factual findings for clear error and its legal conclusions de novo. *Id.* at 234.

To obtain a preliminary injunction, the Nagireddys had to show:

(1) they have a reasonable likelihood of success at trial;

(2) their remedies at law are inadequate, meaning they will suffer irreparable harm without an injunction;

(3) the potential injury without an injunction outweighs the potential harm from an injunction; and

(4) issuing the injunction will not disserve the public interest.

*Walgreen*, 769 N.E.2d at 161.

This case turns on the first element—whether the Nagireddys proved they are likely to succeed on the merits of their underlying claim for public nuisance. "Movants must establish by a preponderance of the evidence a reasonable likelihood of success on the merits of their claim." *Planned Parenthood*, 211 N.E.3d at 964 (cleaned up). If the Nagireddys did not prove an element, the trial court abused its discretion in issuing the injunction. *Walgreen*, 769 N.E.2d at 161.

Willow Haven argues the Nagireddys failed to meet their likelihood-of-success burden for two reasons: first, because they did not exhaust administrative remedies; and second, because they failed to prove by a preponderance of the evidence that Willow Haven's land use is a public nuisance. Though we disagree with Willow Haven's first argument, we agree with its second. Thus, we vacate the trial court's preliminary injunction.

## A

A party aggrieved by a local government's zoning decision may challenge the decision in court by seeking judicial review. Ind. Code § 36-7-4-

1602. This path is the "exclusive means" for obtaining court review of zoning decisions "made by a board of zoning appeals, legislative body, plan commission, preservation commission, or zoning administrator". *Id.* § 36-7-4-1601(a).

Before seeking judicial review, the party aggrieved by the zoning decision must (among other things) exhaust all available administrative remedies "within the board whose zoning decision is being challenged." *Id.* § 36-7-4-1604(a). Relevant here, a party aggrieved by a city's decision to grant a building permit—made in Carmel by its director of community service—may seek administrative relief before the local BZA. A zoning decision subject to review by the BZA includes a "decision[] or determination made by . . . a staff member under the zoning ordinance." *Id.* § 36-7-4-918.1(1). Failure to exhaust waives the right to judicial review at all. *Id.* § 36-7-4-1604(b). Courts enforce the legislature's exhaustion requirement strictly, see *In re R.L.*, 246 N.E.3d 257, 261 (Ind. 2024), so "[p]remature litigation may be avoided, an adequate record for judicial review may be compiled and [the board may] retain the opportunity and autonomy to correct [its] own errors", *ibid.* (quoting *Carter v. Nugent Sand Co.*, 925 N.E.2d 356, 360 (Ind. 2010)).

Willow Haven argues this judicial-review framework applies to the Nagireddys' nuisance action. According to Willow Haven, the Nagireddys cannot bring their nuisance action—based on their theory that Willow Haven's home violates the UDO—until they exhaust administrative remedies by appealing the city's permit decision to the BZA. The Nagireddys disagree based on precedent from this Court and the court of appeals holding that nonparties to a permit application need not exhaust administrative remedies before bringing a nuisance action. We agree with the Nagireddys on this procedural point. We first address our longstanding precedent, and then we explain that Willow Haven's arguments fail under this precedent because the Nagireddys were not parties to Willow Haven's permitting action.

1

We have long held that the judicial-review statute governs only parties to the original permitting action. We first announced this rule in *Fidelity Trust Company v. Downing*, 68 N.E.2d 789 (Ind. 1946). There, the plaintiff

requested an injunction barring the defendant from constructing a building. *Id.* at 790. The defendant had obtained a building permit from the city of Indianapolis, but the plaintiff—who was not party to the original permitting action—alleged the construction was a public nuisance because it violated a local ordinance. *Id.* at 790–91. Though the judicial-review statute then required any "person aggrieved" by an adverse permitting decision to appeal to the zoning board before suing in court, we did not impose this requirement on the plaintiff. *Id.* at 791. We held the judicial-review mandate "is not broad enough to include anyone other than the person directly affected by" the permitting decision. *Ibid.* Only parties to a permitting action must exhaust before seeking review of the permitting action in court. *Ibid.* "To hold otherwise", we reasoned, "would be to hold that every property owner in any particular district would be compelled to take notice of every action" whenever an administrative official or board enforces a local ordinance. *Ibid.*

Our court of appeals, for its part, has faithfully applied this rule ever since. In *Bixler v. LaGrange County Building Department*, 730 N.E.2d 818 (Ind. Ct. App. 2000), the appellate court did not require the plaintiff to appeal a county's permit decision to the BZA before suing in court to challenge the permit. The panel, citing *Fidelity*, observed: "the exhaustion prerequisite historically has been restricted only to permit applicants, who are directly affected by a public official's decision to issue, condition or deny building permits." *Id.* at 820. And in *Ross v. Harris*, 860 N.E.2d 602 (Ind. Ct. App. 2006), the plaintiff alleged his neighbors' addition to their home violated a local ordinance and was thus a nuisance. *Id.* at 603. The defendants built the addition after obtaining a building permit. So they argued the plaintiff needed to exhaust administrative remedies before suing them in court. *Id.* at 604. The panel rejected this argument, citing *Fidelity*, because the plaintiff was not a party to the permit application. *Ibid.*

Under this precedent, the Nagireddys were not required to exhaust administrative remedies before suing Willow Haven. The Nagireddys were not parties to Willow Haven's building permit application; they had no notice of the application; and they did not know the city had granted the permit until construction began. Requiring the Nagireddys to exhaust remedies before suing would charge homeowners across Indiana with policing their local government's zoning decisions on pain of forfeiting their

right to bring a nuisance action later if one of those decisions happened to affect them adversely.

2

Even so, Willow Haven urges our Court not to apply *Fidelity* here. First, it argues that *Fidelity* is inapt because the legislature has since amended the judicial-review statute to give plaintiffs like the Nagireddys standing to seek judicial review. Next, Willow Haven asserts that demanding the Nagireddys exhaust would not require every landowner to take notice of every building permit issued. In its view, Indiana's discovery rule applies in the exhaustion context. Thus, according to Willow Haven, a landowner's time to seek administrative review of a permitting decision does not start running until the landowner learns of the decision it wants to challenge, and not before.

Willow Haven's attempt to distinguish *Fidelity* falls flat. To be sure, the legislature amended the judicial-review statute in 2011 and replaced the former "certiorari" procedure with the current judicial-review framework in Indiana Code chapter 36-7-4. But nothing in the new framework requires non-applicants to follow the judicial-review procedures before suing in court for a nuisance.

The current statute grants only limited standing to seek judicial review. A person has statutory "standing to obtain judicial review of a zoning decision" in four circumstances. I.C. § 36-7-4-1603(a). Willow Haven—though it demands the Nagireddys follow the statute and exhaust administrative remedies—does not explain how the Nagireddys have standing under the statute. Willow Haven does not allege that:

(1) Carmel's zoning decision is "specifically directed" to the Nagireddys, see *id.* § 36-7-4-1603(a)(1);

(2) the Nagireddys "participated in [a] board hearing that led to the decision", see *id.* § 36-7-4-1603(a)(2);

(3) the Nagireddys are "a public use airport owner or operator" seeking judicial review of a decision that "may have a

negative impact on" airport operations, see *id.* § 36-7-4-1603(a)(3); or

(4) the Nagireddys are "otherwise aggrieved or adversely affected by the zoning decision", *id.* § 36-7-4-1603(a)(4), because the permit decision: (a) "prejudiced or is likely to prejudice" their interests; (b) they were eligible "for an initial notice of hearing" on the permit application; (c) Carmel had to consider their interests in weighing the permit; and (d) a judgment in their favor would "substantially eliminate or redress" the prejudice they have suffered or will suffer, see *id.* § 36-7-4-1603(b).

Willow Haven has not shown that the Nagireddys have statutory standing to seek judicial review. Thus, the Nagireddys cannot—and need not—seek administrative review before challenging Willow Haven's land use in court.

As for Willow Haven's discovery-rule argument, we find this argument both waived and without merit. Willow Haven waived this argument by raising it for the first time on transfer. *B.N. v. Health & Hosp. Corp.*, 199 N.E.3d 360, 363 n.1 (Ind. 2022). On the merits, Willow Haven has not cited, and we have not found, any appellate case in Indiana applying the discovery rule in the exhaustion context. Willow Haven's authorities apply the discovery rule only in the traditional sense—to statutes of limitation. E.g., *Chmiel v. US Bank Nat'l Ass'n*, 109 N.E.3d 398, 408 (Ind. Ct. App. 2018); *Barrow v. City of Jeffersonville*, 973 N.E.2d 1199, 1205–06 (Ind. Ct. App. 2012), trans. denied. We decline to extend the discovery rule to a deadline for seeking administrative review of a local permitting decision.

The trial court correctly held that the Nagireddys need not exhaust administrative remedies in the BZA before suing Willow Haven in court.

### B

We turn next to Willow Haven's second argument: that the Nagireddys failed to prove they are likely to succeed on their nuisance claim. Here, we agree with Willow Haven. To show they are likely to succeed on their claim, the Nagireddys had to prove by a preponderance of the evidence that Willow Haven's land use violates the UDO. The Nagireddys

showed the UDO does not list Willow Haven's home as a permitted land use. But Willow Haven presented evidence that its land use is nonetheless legal under the UDO because the UDO yields to state and federal law, which Willow Haven says protects its proposed land use. The Nagireddys did not confront this evidence. Thus, at this stage, the preliminary injunction was improper.

1

The Nagireddys' suit alleges a public nuisance—that Willow Haven's use of its land violates the UDO. A plaintiff alleging a public nuisance must show the defendant's use of its land is "forbidden by a valid ordinance" and "will work special damages to" the plaintiff's property. *Fidelity*, 68 N.E.2d at 792. If the plaintiff shows a public nuisance, she may seek "relief by injunction" against the alleged violation. *Ibid.* The UDO acknowledges as much. It says an unpermitted land use is "a common nuisance and as such may be abated in such manner as nuisances are now or may hereafter be abated under existing law." UDO § 10.01(D). The BZA may grant a variance to permit a land use otherwise prohibited by the UDO. *Id.* § 9.15(A).

To determine whether Willow Haven's use of its land is a public nuisance, we look to the UDO. "We interpret ordinances and statutes using the same methodology." *Noblesville, Ind. Bd. of Zoning Appeals v. FMG Indianapolis, LLC*, 217 N.E.3d 510, 513 (Ind. 2023). We thus give the UDO's words their plain meaning. *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 829 (Ind. 2011). "When those words are clear and unambiguous, we simply apply their plain meaning, without resorting to other canons of statutory construction." *Ind. Right to Life Victory Fund v. Morales*, 217 N.E.3d 517, 524 (Ind. 2023) (quoting *Rogers v. Martin*, 63 N.E.3d 316, 327 (Ind. 2016)). We review the trial court's interpretation of the UDO de novo. *FMG Indianapolis*, 217 N.E.3d at 513–14.

The UDO does not list Willow Haven's home as a permitted land use in the Nagireddys' neighborhood. The UDO divides the city into twenty-three primary zoning districts. UDO § 1.17(A). An "S1" district—such as the Nagireddys'—permits only single-family dwellings. *Id.* § 2.03. A "single-family dwelling" under the UDO includes certain types of "group homes" and "licensed" facilities, which the UDO defines in reference to

certain state statutes. *Id.* § 11.02. Yet Willow Haven admits both that its home is not a "group home" as expressly defined in the applicable UDO, and that its home is not (and will not be) "[a] facility licensed under" any state statute the UDO references:

- "[A] Group Home for the mentally ill" under section 12-28-4-7;

- "[A] Group Home for not more than ten (10) developmentally disabled individuals" established under section 12-11-1.1-1;

- "A residential structure" licensed under article 12-17.4 that provides twenty-four-hour care to not more than ten children;

- A facility licensed under chapter 12-28-4 "that provides residential services for developmentally disabled individuals in a program described in" section 12-11-1.1-1; or

- A facility licensed under chapter 12-28-4 "that provides residential services for mentally ill individuals in a program described in" section 12-22-2-3.

*Ibid.*

Undaunted, Willow Haven ignores this limited list and urges us to treat its home as a "housing with services establishment" for residents "diagnosed with Alzheimer's disease . . . or dementia" under another state statute, Indiana Code section 12-10-5.5-1. This statute does not require a license for a home like Willow Haven's. Thus, Willow Haven asserts, its home is a permitted "unlicensed group home" under the UDO.

The problem with this argument is that section 12-10-5.5-1 defines "housing with services establishment" for state-law purposes. But the UDO does not incorporate this statute and nowhere mentions a "housing with services establishment" as a permissible "group home" or "facility" within one of Carmel's residentially zoned districts. Importing this statute into the UDO, as Willow Haven urges, would override the UDO's plain language and flout our duty to be "mindful of both what [the enactment] does say and what it does not say." *Garner v. Kempf*, 93 N.E.3d 1091, 1094

(Ind. 2018) (quoting *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016) (cleaned up)).

Nor does the UDO's automatic-amendment provision salvage Willow Haven's argument here. The UDO automatically incorporates certain changes to the Indiana Code, but only changes to those code provisions already in the UDO: "Whenever [the] Indiana Code cited in the Unified Development Ordinance has been amended or superseded, the Unified Development Ordinance shall be deemed amended in reference to the new or revised code." UDO § 1.15. This provision does not add section 12-10-5.5-1 to the UDO because it is a new code provision: it was not previously "cited in the [UDO]", and it does not "amend[] or supersede[]" a statute already "cited in the [UDO]". *Ibid.*

The Nagireddys proved that Willow Haven's home is not a listed "group home" under the UDO.

2

But this case turns on more than what the UDO lists as a group home. The UDO also incorporates mandates imposed by state and federal law. If state or federal law protects Willow Haven's land use, then the UDO permits it. Willow Haven argued as much before the trial court and, in support, cited the city's determination that state and federal law requires the city to allow Willow Haven to operate its home. The Nagireddys did not counter this evidence or argue that state and federal law does not protect Willow Haven's land use. They insist that state and federal law has no bearing at this stage, and that Willow Haven's land use is illegal unless it gets a variance from the BZA or challenges the UDO's legality in court. But this is wrong. Because the UDO incorporates state and federal law, both bear directly on whether Willow Haven's land use is illegal.

The UDO states: "Whenever a provision of any State or federal code or regulation . . . imposes a greater restriction or a higher standard than is required by the [UDO], the provision of the State or federal code or regulation . . . shall apply." *Id.* § 1.09(B)(2)(b). Though this provision is not a model of clarity, both Willow Haven and the Nagireddys agree that it operates as a saving clause in recognizing the supremacy of state and federal law. Put differently, this provision ensures that those land uses permitted

by state or federal law are also permitted by—even if not expressly listed in—the UDO.

The city determined Willow Haven's land use complies with the UDO because state and federal law protects housing for the elderly, disabled, and mentally ill. The city's director of community services cited state and federal law in issuing Willow Haven a building permit. He determined the UDO "could not preclude Willow Haven from constructing a home for frail elderly individuals with dementia and/or Alzheimer's Disease" because such a bar "may have violated both state and federal law." The city's corporation counsel affirmed the director's conclusion, citing state and federal law, including the Fair Housing Act, the Americans with Disabilities Act, and Seventh Circuit caselaw to reiterate that the UDO could not preclude Willow Haven's land use and "that no variance was required prior to issuing the building permit."

The Nagireddys do not argue whether state and federal law bars discrimination in housing and local zoning regulation. They argue, rather, that state and federal law does not matter at this stage. Since Willow Haven's home is not a "group home" under the UDO's plain language, the argument goes, that is enough to show they are likely to succeed on their nuisance claim, thus entitling them to a preliminary injunction. The trial court's order granting the injunction accepted the Nagireddys' argument: the Nagireddys are likely to succeed on their claim because Willow Haven's home is not a "group home" under Carmel's UDO. But this conclusion is only half the inquiry. The other half is that the UDO also permits those land uses protected by state and federal law. To determine whether Willow Haven's land use is illegal and thus a public nuisance, the trial court needed to decide whether the UDO provisions incorporating state and federal law protect Willow Haven's land use.

That did not happen here. The trial court did not adjudicate—because the parties did not fully litigate—whether state or federal law requires Carmel to permit Willow Haven's land use under the UDO. The trial court focused instead on Willow Haven's failure to obtain a variance from the local BZA. "Because Willow Haven skipped [the variance] process," the trial court asserted, the court "does not—and cannot—know whether Willow Haven would be entitled to an accommodation" under state or federal

law. Thus, the court concluded, because "Willow Haven did not obtain a variance to construct and operate" its home, "and that such construction and operation is [sic] not a permitted use under the UDO" without a variance, the Nagireddys are likely to succeed on their claim.

Though the trial court is right that only the BZA can grant a variance, its order presupposes that Willow Haven needed a variance. Yet a variance is required only for deviations from permitted uses. Put differently, if the ordinance authorizes the use, no variance is necessary. The UDO does not list Willow Haven's type of home as an authorized use. But that does not answer the remaining question under the UDO, which is whether unspecified provisions of state or federal law nevertheless require the city to allow Willow Haven's use. Because the trial court did not address that issue, its entry of the preliminary injunction was premature and an abuse of discretion. *Walgreen*, 769 N.E.2d at 161.

\* \* \*

For these reasons, we reverse the trial court, vacate the preliminary injunction, and remand for further proceedings consistent with our opinion.

Rush, C.J., and Massa, Goff, and Molter, JJ., concur.

ATTORNEYS FOR APPELLANT WILLOW HAVEN ON 106TH
STREET, LLC
Thomas F. Bedsole
Maggie L. Smith
Todd D. Small
Frost Brown Todd LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES HARI AND SARANYA NAGIREDDY
John P. Higgins
Michael J. Blinn
Stoll Keenon Ogden PLLC
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE ACCELERATE INDIANA MU-
NICIPALITIES AND INDIANA MUNICIPAL LAWYERS ASSOCIA-
TION
Paul Edgar Harold
Tiernan B. Kane
SouthBank Legal LLC
South Bend, Indiana

ATTORNEY FOR AMICUS CURIAE RESIDENTIAL ASSISTED LIV-
ING NATIONAL ASSOCIATION
Cara Schaefer Wieneke
Wieneke Law Office LLC
Brooklyn, Indiana