Jacqueline WISNER, M.D. and
The South Bend Clinic,
L.L.P., Appellants,

v.

Archie L. LANEY, Appellee.

No. 71A03–1007–CT–382.

Court of Appeals of Indiana.

July 21, 2011.

Edward L. Murphy, Jr., Heidi K. Koeneman, Murphy Law Group, Fort Wayne, IN, Attorneys for Appellants.

Timothy S. Schafer, Timothy S. Schafer, II, Schafer and Schafer, Merrillville, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Jacqueline Wisner, M.D. ("Dr. Wisner") and The South Bend Clinic, L.L.P. ("SBC") (collectively, "the Defendants") appeal a judgment in favor of Archie Laney ("Laney"). Laney cross-appeals.

We affirm in part, reverse in part and remand in part.

### ISSUES

1. Whether the trial court abused its discretion in denying the Defendants' motion to correct error as it pertained to their claim that Laney's counsel engaged in inappropriate and prejudicial conduct during the trial.

2. Whether the trial court abused its discretion in denying the Defendants' motion to correct error as it pertained to statements made by Laney's counsel during closing argument.

3. Whether the trial court abused its discretion in allowing Laney's expert witness, Robert Campbell M.D., to testify after he allegedly violated the separation of witnesses order by speaking with two fact witnesses before giving his own trial testimony.

4. Whether the trial court abused its discretion in allowing Laney's counsel to

ask questions about insurance coverage during voir dire.

5. Whether the trial court abused its discretion in denying Laney's request for prejudgment interest.

### FACTS

On Friday, March 9, 2001, Laney, then a sixty-six-year-old woman living and working in South Bend, became lightheaded, off-balance, and weak while working at Montgomery Ward. She called her daughter, Dellar, a licensed practical nurse, and asked that Dellar come to Montgomery Ward and assist her.[1] Dellar arrived and checked Laney's blood pressure, which was elevated.

Dellar drove Laney to SBC where they hoped to see Laney's regular doctor, Mark Stanish. Dr. Wisner, not Dr. Stanish, was on duty that night. Because it was a busy night, Laney waited an hour and a half before Dellar assisted her to the examining room. Dellar told Dr. Wisner that Laney had been lightheaded, off-balance, and weak, and she informed Dr. Wisner of Laney's elevated blood pressure. Dr. Wisner asked Laney whether she had a history of allergies or sinus problems. Dr. Wisner then examined Laney's eyes, ears and lungs and had her lie down so that she could listen to .her stomach. Dr. Wisner observed a large amount of wax in Laney's ear, and she asked Dellar to look at the wax. A nurse performed a finger stick to check Laney's blood sugar and had blood drawn to see whether Laney was anemic. After finishing the examination and observing the test results, Dr. Wisner told Laney that she had an inner ear infection (labyrinthitis). Dr. Wisner did not remove the wax from Laney's ears. Dr. Wisner

---

1. The trial transcript refers to Laney's daughter as "Deller"; however, on appeal both parties refer to her as "Dellar."

then gave Laney prescriptions for Tetracycline, an antibiotic, and Meclizine, an anti-dizziness drug. She told Laney that it would take three days for the medicine to remove the dizziness and that Laney should see Dr. Stanish on the third day if the dizziness persisted.

Dellar obtained the medicine for Laney immediately after the doctor's visit, and she ensured that Laney took the first dose that night. Dellar was with Laney on Saturday, March 10, and Sunday, March 11, and she observed that Laney's condition did not improve. Dellar helped put Laney to bed at around 8:00 p.m. on Sunday night and then went home. At around midnight, Laney called Dellar and told her that she could not move her right arm or right leg.

Dellar took Laney to the St. Joseph Regional Medical Center's emergency room, and Laney was subsequently transferred to a Medical/Surgical floor. An MRI revealed that Laney had experienced an ischemic stroke resulting from a lack of oxygen to the left side of her brain, which affected her right arm and leg. Physical rehabilitation was unsuccessful, resulting in Laney's continued inability to use her right side.

On November 22, 2002, Laney filed with the Indiana Department of Insurance a proposed complaint alleging that the Defendants negligently failed to diagnose and treat a transient stroke on or about March 9, 2001, which caused Laney to suffer a disabling stroke on March 12, 2001. The proposed complaint also alleged that Dr. Wisner and/or SBC negligently failed to maintain the medical record from Laney's March 9, 2001 visit to SBC. On November 26, 2002, Laney filed an identical complaint with the St. Joseph Superior Court, but pursuant to the provisions of the Medical Malpractice Act (the "Act"), this complaint was voluntarily dismissed without prejudice.

On April 12, 2007, a Medical Review Panel convened and deliberated. The panel concluded that SBC did not, by and through its personnel, fail to comply with the appropriate standard of care with regard to the treatment of and services to Laney. The panel also concluded that SBC failed to comply with the appropriate standard of care as charged in the complaint with regard to the lost records. However, the panel further concluded on May 21, 2007, that this failure was not a factor in the resultant injuries to Laney. With reference to Dr. Wisner, the panel concluded that "a material issue of fact exists, not requiring expert opinion, bearing on the liability for consideration by the court or jury. Regardless, the conduct complained of was not a factor of any resultant damages." (Defendants' App. 23).

On August 6, 2007, Laney filed a complaint in the St. Joseph Superior Court alleging negligence by the Defendants. Laney also alleged that as a result of this negligence, she suffered "an ischemic infarction of the left side of the brain, more particularly described as a left cerebral hemispheric CVA." (Defendants' App. 34). Laney further alleged that as a result of the negligence she suffered and/or incurred (1) loss of earnings and wages; (2) loss of additional employment benefits; (3) permanent impairment to her right upper and lower extremities; (4) impairment to cognitive functions; (5) medical bills and expenses; (6) pain and suffering; and (7) mental anguish.

A jury trial was conducted from March 1, 2010, through March 5, 2010. Laney and Dellar testified about the particulars of Laney's initial symptoms, the examination by Dr. Wisner, Laney's subsequent stroke, and the damages thereafter in-

curred. Doctors Jonathon Liss and Robert Campbell testified that because of Laney's symptoms and risk factors, Dr. Wisner should have ordered a detailed neurologic examination rather than performing the more cursory examination in the SBC examining room. Dr. Liss testified that Dr. Wisner failed (1) to properly diagnose a transient ischemic attack ("TIA"),[2] which is a warning sign of an impending stroke; (2) to perform a proper neurologic examination; (3) to render proper medical care and treatment; (4) to order hospitalization; and (5) to order any tests to rule out TIA. Dr. Liss also testified that the event that Laney presented to Dr. Wisner on Friday night, March 9, 2001, at the SBC is the same event that she presented to St. Joseph's on Sunday night/Monday morning, March 11–12, 2001. Dr. Liss concluded that Dr. Wisner failed to render proper medical care and treatment, and as a result, her actions fell below the generally accepted standards of care. Dr. Campbell agreed with Dr. Liss' conclusion, testifying that he believed Dr. Wisner's actions were a "deviation of the standard of care." (Tr. 544–45).

The trial was hotly contested and both attorneys were admonished at various times during the trial. Laney's attorney was warned on several occasions about his disregard of the trial court's initial motion in limine and subsequent trial rulings prohibiting him from referring to Dr. Stanish's decision, based on SBC policy, to discontinue Laney as a patient after she filed suit. Laney's attorney was also found in contempt for showing disrespect to opposing counsel and to the court. However, as described below, the trial court concluded that the trial was filled with improper behavior by both attorneys.

At the conclusion of Laney's presentation of the evidence, Dr. Wisner and SBC orally moved for a directed verdict, arguing that there was insufficient evidence to support any independent claim of negligence against SBC. The trial court granted the motion and dismissed Laney's claim of independent acts of negligence by SBC, leaving SBC as a named defendant solely for the purpose of respondeat superior liability as to Dr. Wisner, its employee.

Following the conclusion of the evidence, the jury returned a verdict in favor of Laney and against the Defendants in the sum of $1.75 million. On March 12, 2010, the Defendants filed a motion for reduction of the verdict and judgment to the statutory maximum prescribed by the Act. Laney objected to the reduction and also asked for an award of $100,000 in prejudgment interest. On March 18, 2010, the trial court entered judgment in favor of Laney and against the Defendants for the amount of $1.25 million, the maximum recovery under the Act.

On April 5, 2010, the Defendants filed a motion to correct error requesting a new trial pursuant to Indiana Trial Rules 59(J) and 60(B)(3). Trial Rule 59(J) provides specific types of relief when a trial court determines in response to a motion to correct error that prejudicial or harmful error occurred. Rule 60(B)(3) states that the trial court may provide relief from judgment for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party."

Specifically, the Defendants alleged:

---

**2.** "Transient" means an event that lasts for less than twenty four hours. "Ischemic" means "that there was a blood loss to the brain [blockage] in some section." (Tr. 372). "Attack" is a sudden event. Dr. Liss testified that Laney was experiencing "a stroke in evolution." (Tr. 428).

2. First, this Court erred when it failed to order a mistrial based on the consistent, unprofessional and prejudicial conduct of plaintiff's counsel which, when taken as a whole, deprived the defendants of a fair trial.

3. Second, this Court erred in allowing plaintiff to argue that the missing March 9, 2001 record, which was under the control of the South Bend Clinic, should somehow be attributed to Dr. Wisner and that its absence was "suspect" and "fishy," implying to the jury that Dr. Wisner intentionally destroyed or concealed the record to cover-up her alleged negligence in treating the plaintiff on that date. With the South Bend Clinic no longer in the case as an independent entity, it was absolutely improper for plaintiff to make any arguments with respect to the South Bend Clinic's alleged misconduct, intentional concealment, or "coincidental," "mysterious," or "fishy" missing record. Plaintiff's intentional references to misconduct involving the March 9, 2001 record were prejudicial and deprived the defendants of the opportunity for a fair trial.

4. Next, this Court erred in allowing the testimony of plaintiff's expert witness, Robert Campbell, M.D., after learning that he violated the separation of witnesses order by speaking with Dellar Laney after [her] testimony, but before he testified.

5. Finally, despite this Court granting defendant's [sic] Motion in Limine to exclude any reference to "insurance" or the fact that the defendant's [sic] had liability insurance coverage for this incident, the first two questions plaintiff's counsel asked of each prospective juror were: 1) Do you work for Pro Assurance Insurance Company, and 2) Do you own stock in Pro Assurance Insurance Company. The defendants acknowledge the plaintiff's need to select fair and unbiased persons and yet, this was a direct violation of the order in limine and by allowing such prejudicial information to the jury, wholly deprived defendants of a fair trial.

(Defendants' App. 266–67).

After a hearing, the trial court denied the motion. In its order, the trial court made the following findings and/or conclusions:

This court denies defendants' Motion to Correct Error on each alleged error as follows:

1. Defendants did not express the reasons to support their Motion to Correct Error in specific terms as required. Ind. TR 59(D). The argument was very general, not describing a particular act or comment by the plaintiff. In fact, the trial was replete with improper behavior, in this judge's opinion, by *both* attorneys. However, there was no substantial prejudice.

2. Plaintiff's counsel's final *argument* was just that. The jury was instructed that the final argument was not evidence. Plaintiff's counsel argued that the most important record, under the control of Dr. Wisner for some time, was mysteriously gone. The jury was very carefully and clearly instructed that The South Bend Clinic was not an independent party and was sued only under the theory of respondeat superior. This instruction cured any confusion which may have resulted from the final argument which, at the time, teetered on the line, but never quite crossed the line.

3. Dr. Campbell did not violate the separation of witness order. He casually spoke to the plaintiff outside the courtroom simply asking how she was feeling. His testimony had nothing to do with that conversation which was clearly done in good faith. His testimony covered his expertise and opinion, all covered in a previous deposition.

4. The voir dire questions regarding ownership in a specific insurance company or whether the potential juror was insured by that company, were proper. *Stone v. Stakes*, 749 N.E.2d 1277 (Ind.Ct.App.2001), [*trans. denied* ].

(Defendants' App. 10–11). (emphasis in original).

The Defendants now appeal the trial court's denial of their motion to correct error. Laney cross-appeals on the issue of the propriety of the trial court's order denying prejudgment interest.

## DECISION

### Standard of Review

■ Our court reviews rulings on motions to correct error for an abuse of discretion. *Baumgart v. DeFries*, 888 N.E.2d 199, 205 (Ind.Ct.App.2008), *trans. denied.* An abuse of discretion occurs if the trial court's decision was against the logic and effect of the facts and circumstances before the court. *Id.* Where, as here, the motion is predicated on Trial Rule 60(B)(3), the movant must show that (1) misconduct occurred; (2) the misconduct prevented the movant from fully and fairly presenting its case at trial; and (3) the movant has a meritorious defense. *Outback Steakhouse of Florida, Inc. v. Markley*, 856 N.E.2d 65, 73 (Ind.2006). If a party cannot show that misconduct substantially prejudiced the party's presenta-

tion of its case, then "a court should not set aside an otherwise final judgment." *Id.* The infusion of Trial Rule 60(B)(3) into the Defendants' motion to correct error does not change our standard of review in this case, as a trial court's ruling on Trial Rule 60 motions is also reviewed for an abuse of discretion. *Id.* at 72.

### 1. *Inappropriate Conduct by Laney's Counsel*

■ The Defendants contend that the trial court abused its discretion in not ordering a new trial to remedy alleged egregious and prejudicial conduct by Laney's counsel. The Defendants argue that the trial court's remedies of finding Laney's counsel in contempt and advising the jury to disregard some of his statements were insufficient to undo the cumulative effect and prejudice caused by such conduct. The Defendants rely on *Outback*, 856 N.E.2d at 82, for the proposition that the cumulative effect of misconduct can produce "a severely unfair trial."

The Defendants cite three instances where Laney's attorney, over objection from the Defendants, asked questions in violation of the trial court's ruling that he should not broach the subject of Dr. Stanish's decision, based on SBC policy, to discontinue treating Laney after she filed suit. After the last instance, the trial court instructed the jury to disregard the questions.

The Defendants also cite an incidence where the trial court sustained their objection that Laney's attorney was argumentative when he questioned a member of the Medical Review Panel. The Defendants further cite an occasion where Laney's counsel directly commented about the Defendants' attorney's strategy, and the trial court, after objection from the Defendants, admonished him not to "play the little boys games." (Tr. 958). The Defendants also

cite to a later finding of contempt because of Laney's attorney's further comments about the Defendants' attorney. Finally, the Defendants cite comments about the Defendants' attorney during closing argument that resulted in an objection and an order by the trial court that Laney's attorney apologize to the jury.

■ We note that the trial court is in a better position to gauge the effects of trial counsel's actions or omissions upon the jury. *See Strack and Van Til, Inc. v. Carter*, 803 N.E.2d 666, 677 (Ind.Ct.App. 2004). Here, the trial court concluded that the trial was "replete with improper behavior" by both attorneys. (Defendants' App. 11). The trial court further concluded that there was no substantial prejudice to either party from the attorneys' behavior. *Id.* As we note above, the Defendants must show that the trial court abused its discretion by making a decision against the logic and effect of the facts and circumstances before it. A lawyer must also act with dedication to the interests of the client. However, the lawyer's duty to his client does not require offensive tactics or preclude the treatment of all persons involved in the legal process with courtesy and respect. Although we agree with the Defendants that Laney's attorney's actions were sometimes unprofessional over the course of the five-day trial, we cannot say that the trial court abused its discretion in determining that his actions did not deprive the Defendants of a fair trial.

Our conclusion is especially true given Dr. Stanish's subsequent disclosure to the jury, through cross-examination, that he is a part owner of SBC, a revelation that clearly established the possibility of bias, which did not go unnoticed by the trial court. Thus, no substantial prejudice occurred when Laney's attorney improperly pursued proof of a lesser form of perceived bias.

### 2. *Statements During Closing Argument*

The Defendants contend that the trial court erred in denying their motion to correct error as it pertains to Laney's reference, during closing argument, to the lost medical records. The Defendants argue that once SBC was removed from the case as an independent party, it was improper for Laney to argue or make any references to SBC's alleged misconduct through intentional concealment of the missing records from Laney's March 9, 2001 visit.[3]

The Defendants do not cite to the transcript in the argument section of their brief to show when the alleged misconduct occurred. Thus, the Defendants fail to comply with the requirement of Indiana Rule of Appellate Procedure 46(A)(8)(a) that each contention be supported by citation to the "Appendix or parts of Record on Appeal relied on. . . ."

The transcript discloses, however, that Laney's counsel set forth summaries of testimony regarding the procedure followed and diagnosis made by Dr. Wisner during the visit. Laney's counsel then made the following statements:

> And what's worse is there's [sic] no records. The records are conspicuously

---

**3.** Prior to the parties' final arguments, the court instructed the jury as follows:

> Before the final arguments, the parties have agreed upon the wording of the following instruction following a ruling I made based on my interpretation of the law.
> You are instructed that the Court has ruled as a matter of law that Defendant [SBC] is not liable to Plaintiff Archie Laney for any independent act of negligence. However, Defendant [Dr. Wisner] was an employee of [SBC]. If you find Defendant [Dr. Wisner]— if you find against [Dr. Wisner], you must also find against her employer, [SBC].

(Tr. 1114).

missing. The one record on the one day we need just happens to be missing. And we would submit, ladies and gentlemen, if we had that record it would show exactly what was done, and more importantly, exactly what was not done in this case.

Even more ironic is Dr. Wisner had no independent recollection of what happened. Very convenient. And we had no nurses called to try to rebut what we're saying.

So none of the evidence they show was consistent with what their diagnosis was. They gave nothing whatsoever to support it. The one doctor said vertigo earlier today, remember, and it was gone. It was gone by the time she got to Monday. None of the other doctors ever diagnosed it, none of them. All the doctors that saw her at Saint Joe right after Sunday night, none of them found vertigo. None. Isn't that something? It went away. Another coincidence.

Missing records. Coincidence.

(Tr. 1125).

■ Initially, we note that the Defendants did not object at trial to these statements or to subsequent similar statements. To seek appellate relief based on alleged improprieties in a closing argument, a party " 'must promptly interpose and state its objection to the language or argument and request the court to so instruct the jury as to counteract any harmful effect of such language or argument.' " *Paragon Family Restaurant v. Bartolini*, 799 N.E.2d 1048, 1057 (Ind.2003). Having failed to object at trial, the Defendants have waived this issue on appeal.

■ The Defendants did, however, object to the following:

MR. SCHAFER [Laney's counsel]: Dr. Stanish ... who is this guy? Well, I found out who [he] is. He's a partner and owner of the clinic. Gee, I wonder why. I guess he's got a dog in the fight. We're suing his clinic.

MR. MURPHY [Defendants' counsel]: Objection. That is not the correct statement. You're suing the clinic through the doctor. You have no claim against the clinic anymore.

THE COURT: That's correct. I'll sustain.

MR. SCHAFER [Plaintiff's counsel]: The verdict form will be against the clinic and the doctor. We're suing the clinic through their employee and physician, Dr. Wisner.

(Tr. 1130–31).

We observe, as we did in our discussion of Issue 1, that the trial court was in the better position to ascertain the effect of the allegedly prejudicial statements. In its findings, the trial court noted that the jury was clearly instructed both that Laney's final argument was not evidence and that SBC was not an independent party and was sued under the theory of respondeat superior. We cannot say that the trial court abused its discretion in concluding that the instructions were sufficient to dispel any confusion that may have been caused by Laney's counsel's final argument.

### 3. *Separation of Witnesses*

■ The Defendants contend that the trial court erred in not ordering a new trial or striking the testimony of Laney's witness, Dr. Campbell, after he acknowledged that before his testimony he asked both Laney and Dellar how Laney was feeling. The Defendants argue Dr. Campbell's questions to Laney and Dellar were violations of the separation of witness order and that the requested mistrial was required because Dr. Campbell testified before the violations were discovered.

The transcript discloses that the trial court held a hearing, outside the presence of the jury, to ferret out whether any prejudicial impropriety might have occurred. During this hearing, it was revealed that before his trial testimony Dr. Campbell merely asked Laney and Dellar how Laney was feeling. He did not ask Laney or Dellar about their testimony or anything related to his upcoming testimony. Most importantly, as the trial court found, Dr. Campbell had been deposed before trial and his testimony at trial did not vary from his deposition answers.

The trial court ruled from the bench that no impropriety had occurred pertaining to either question, and the court reiterated that ruling in its subsequent written order, finding that Dr. Campbell casually spoke to Laney and subsequently testified in good faith. The written order did not specifically mention Dellar; however, the question to Dellar was of the same tenor as the question to Laney. In short, the trial court did not abuse its discretion in concluding that no impropriety occurred.

*Reference to Insurance During Voir Dire*

 The Defendants contend that the trial court erred in not granting a new trial on the basis that they were prejudiced by voir dire questions about insurance coverage. The transcript discloses that Laney's counsel asked the prospective jurors, without objection, whether they worked for ProAssurance Insurance Company or whether they owned stock in the company. None of the prospective jurors answered in the affirmative. After this, counsel asked whether any of the prospective jurors were opposed to injured parties asking for damages. None of the prospective jurors responded to the question. Counsel then asked whether any of the prospective jurors were "involved in rendering healthcare here, associated with healthcare[.]" (Tr. 45). One prospective juror answered

in the affirmative, and Laney's counsel asked him whether his experience would affect his judgment and whether he had "heard stories about lawsuits or have feelings about lawsuits[.]" (Tr. 46). The prospective juror responded that he didn't know anything about specific suits, but he had heard about "how high ... [t]he cost of [different doctors'] insurance and everything else is and how difficult it is for them to be in practice." *Id.* Laney's counsel then asked, "When you talk about how high their insurance is, that's if they have problems or there's [sic] claims made against them?" (Tr. 45–46). It was at this point that the Defendants' counsel mentioned the motion in limine against discussion of insurance and objected to the opening questions about ProAssurance. When the trial judge informed counsel that the plaintiff could ask the prospective jurors "whether they have the insurance themselves or whether they're stockholders," the Defendants' counsel responded, "But I don't think any other questions beyond that is [sic] permissible." (Tr. 47). The Defendants counsel dropped the subject without asking for a ruling or arguing that the jury pool had been tainted. Voir dire then proceeded. Essentially, the Defendants raise this issue as another example of prejudicial misconduct by Laney's trial counsel.

Initially, we observe that the absence of a timely objection results in waiver of an issue on appeal. *See Szpunar v. State,* 783 N.E.2d 1213, 1218 (Ind.Ct.App.2003). Waiver notwithstanding, we conclude that no error occurred.

Laney relies on *Stone,* 749 N.E.2d at 1281, for the proposition that a question "regarding a juror's relationship, financial or otherwise, with a specific insurance company on voir dire examination is not error if the question is asked in good faith." As noted above, the trial court

agreed that *Stone* is controlling. The Defendants question Laney's good faith.

The rationale for not allowing evidence of insurance is that if the jury becomes aware that the defendant carries liability insurance and will not carry the brunt of any judgment, the jury may be prejudiced in favor of an excessive verdict. *Stone*, 749 N.E.2d at 1280. On the other hand, if the jury becomes aware that the defendant does not have insurance and will bear the burden of any judgment, the jury may be prejudiced in favor of a minimal verdict. *Id.*

The *Stone* court noted that Indiana Evidence Rule 411 states that "[e]vidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully." *Id.* at 1281. However, this rule "does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as ... ownership, or control, or bias or prejudice of a witness." *Id.* (quoting additional language from the evidentiary rule). The court further noted that although Rule 411 is an evidentiary rule not strictly applicable to voir dire, "it provides some guidance in this area regarding what categories of inquiry are acceptable. Rule 411 does not limit the allowable evidence regarding insurance only to financial interest, but also allows evidence going to bias or prejudice." *Id.* Thus, the court concluded that "a question regarding a juror's relationship, financial or otherwise, with a specific insurance company on voir dire examination is not error if the question is asked in good faith." *Id.*

Here, the initial questions about a possible relationship between a juror and ProAssurance were legitimate attempts to ascertain any potential for bias or prejudice. The subsequent questions were in response to a remark by a witness, and we cannot say that they were asked in bad faith. In addition, we note that the Defendants' trial counsel asked for neither an admonishment nor a new panel. Under the circumstances, the trial court did not abuse its discretion in denying the Defendants' motion to correct error on this issue.

### 5. *Prejudgment Interest*

■ Laney asserts on cross-appeal that the trial court erred in denying her request for prejudgment interest. We evaluate an award of prejudgment interest under an abuse of discretion standard. *Inman v. State Farm Mutual*, 938 N.E.2d 1276, 1278 (Ind.Ct.App.2010).

Laney filed her original complaint with the trial court on November 26, 2002. She then filed a written settlement offer on April 6, 2005. After stating that Dr. Wisner's liability was apparent, the settlement offer provided the following:

The clinic, as well as Dr. Wisner, can each be held liable for $250,000.00 plus pre-judgment interest up to four (4) years according to statute and case law for a total amount of $600,000.00. Please be advised my client has authorized me to settle this matter for a structured settlement in the amount of $250,000.00 with a present value of $187,001.00 which is the minimum structured settlement permitted to allow my client to proceed to the Patient's Compensation Fund. I think it would be in the best interest of all parties to amicably resolve this matter without a trial on the merits since it is likely that Mrs. Laney would obtain a substantial verdict in light of her permanent injuries and the conspicuously missing medical records of the clinic regarding the March 9, 2001 day in question.

Would you kindly discuss this matter with your clients as well as their insur-

ance carrier and advise me as to your position within the next thirty (30) days. If we are able to resolve this matter at this time, it will avoid any further inconvenience to Dr. Wisner and eliminate her necessity to travel from Baltimore, Maryland[,] to Indiana for a trial on the merits and thereby avoid any further litigation expense. I will await your response.

(Laney's App. 114–15).

The Act required Laney to obtain a determination from a Medical Review Panel prior to pursuing any claim in state court. Accordingly, the trial court dismissed her November 26, 2002 complaint without prejudice, pending the adjudication of her complaint before the Indiana Department of Insurance. On May 21, 2007, the Medical Review Panel issued its determination. On August 6, 2007, Laney filed a renewed complaint with the trial court.

On March 18, 2010, after prevailing at trial, Laney filed a request for prejudgment interest. On April 7, 2010, the Defendants filed their response to Laney's request for prejudgment interest, arguing that Laney had failed to comply with Indiana Code section 34–51–4–6. On June 18, 2010, the trial court entered its order denying Laney's request. The court stated in pertinent part:

> The first relevant portion of the statute for award of prejudgment interest upon a timely offer of settlement is IC § 34–51–4–6(2): This chapter does not apply if ... (2) the terms of the offer fail to provide for payment of the settlement offer within sixty (60) days after the offer is accepted....

> The parties focused on the portion of the statute requirement that the terms of the offer must provide for payment of the offer within sixty days. If that re-

quirement is not met, plaintiff is not entitled to prejudgment interest.

> The case most discussed was *Cahoon v. Cummings*, 734 N.E.2d 535 (Ind.2000). In that case an offer "to settle this case *now* for $75, 001.00" was found to satisfy the requirement of IC § 34–51–4–6(2). In plaintiff's letter of April 6, 2005, the time limit was worded as follows: "*resolve* this matter at this time ..." but does not specifically state that payment of the settlement must be made within sixty (60) days after the offer is accepted. Such a statement fails to meet IC 34–51–4–6(2). Although it certainly is similar to the *Cahoon* Supreme Court decision, it can be distinguished. The April 6, 2005 letter made an offer for settlement. Defendants were instructed that an answer should be forwarded within thirty (30) days. Then, it advised that, "If we are able to resolve at this time, it will avoid any further inconvenience...." The letter does not provide for payment of the offer within sixty (60) days after the offer is accepted. Although the settlement offer must be accepted "within thirty (30) days[,]" there is no instruction as to when payment must be made with relation to the defined time of acceptance.

> But, more interestingly [sic] is the IC § 34–51–4–6(1) requirement.

> Plaintiff is not entitled to prejudgment interest if: (1) Within one (1) year after a claim is filed in the court ... the party who filed the claim failed to make a written offer of settlement to the party or parties against whom the claim is filed.

> In her brief she made an unsupported assertion that since the statutory deadline to make a settlement offer is one year after a claim is filed, and the demand letter was two years before the claim was filed, she argued that it was

made before the one-year statutory deadline expired. But the statute isn't worded as she argued and there is no authority for her interpretation. She based her argument on the interpretation of "within one (1) year after a claim is filed in the court" to apparently mean *"no later* than one (1) year after a claim is filed in the court" so, she argued, a demand made two years before the claim was filed complied with the requirement. In *Tincher v. Davidson,* 784 N.E.2d 551 (Ind.Ct.App.2003), where an injured party failed to make a written offer of settlement within one year after the action was filed, and an earlier offer of settlement before suit was filed was not revived, the court declined an award of prejudgment interest. Therefore, the plaintiff's interpretation is incorrect. Here, plaintiff asserts that the case was filed on August 6, 2007. The offer of settlement was not communicated "within one (1) year after the claim is filed[,]" thereby [the] IC § 34–51–4–6(1) requirement was not met."

Plaintiff's motion for prejudgment interest does not comply with IC 34–51–4–6(1) or (2) and therefore the motion is DENIED.

(Defendants' App. 356–58). (emphasis in original).

The interpretation of a statute is a question of law reserved for the courts. *Cash in a Flash, Inc./Hobart v. Hoffman,* 841 N.E.2d 644, 647 (Ind.Ct.App.2006). Appellate courts review questions of law under a *de novo* standard and owe no deference to a trial court's conclusions. *Id.* If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Id.* However, when the language is susceptible to more than one construction,

we must construe the statute to determine the apparent legislative intent. *Id.* We ascertain and implement legislative intent by giving effect to the ordinary and plain meaning of the statute. *Id.*

The intent of Indiana Code section 34–51–4–6 is stated by our supreme court in *Cahoon,* 734 N.E.2d at 547, where the court held that the "whole point of the statute is to address the cost of delay in payment." The court reasoned that "[i]f a defendant has the option to terminate the dispute at a known dollar cost, and chooses not to do so, that defendant and not the plaintiff should bear the cost of the time value of money in the intervening period if the ultimate result is within the parameters set by the legislature." [4] *Id.*

Our supreme court held that the sixty-day requirement of Indiana Code section 34–51–4–6(1) was met when the plaintiff requested in a written settlement offer that the plaintiff offered "to settle this claim now for $75,001." *Id.* at 546. The court concluded that an offer to " 'settle this claim now for $75,001' clearly conveys a demand for a lump sum payable forthwith, and that there was no doubt in the defendants' insurer's mind that the case could be disposed of as to both doctors for the amount immediately." *Id.* at 547.

■ In the instant case, the trial court first interpreted the provisions of subsection (2). Thus, we initially turn our attention to that provision, which states that prejudgment interest is not available if "the terms of the offer fail to provide for payment of the settlement offer within sixty (60) days after the offer is accepted. . . ."

Laney's written offer of settlement gave the Defendants the option of settling for

---

**4.** The pertinent parameter is stated in Indiana Code section 34–51–4–6(3), which states the prejudgment interest will not be available if

"the amount of the offer exceeds one and one-third (1 1/3) of the amount of the judgment awarded."

the minimum structured settlement permitted to allow Laney to proceed to the Patients Compensation Fund. Although the offer gave the Defendants thirty days to discuss the offer with their insurer, it is clear that, as the lowest offer possible to allow access to the Patients Compensation Fund, it was not an offer open to negotiation. The Defendants either accepted the offer or the matter went to trial.

The monetary terms of the offer are followed by the limiting language of "resolve at this time." (Laney's App. at 115). We conclude that the word "resolve" used in Laney's written offer of settlement is a synonym for the term "settle" as it is used in *Cahoon.* Furthermore, "at this time," as used by Laney in her written offer of settlement, is a synonym for "now," as that term is used in *Cahoon.* Thus, though not explicitly stating the sixty day requirement for payment of the settlement, Laney, like the plaintiff in *Cahoon,* made an offer that could be paid within sixty days. As in *Cahoon,* "[t]he delay is solely for the benefit of the defendants, and the defendants had the power to accept [Laney's] offer immediately." *See id.* Accordingly, we hold that Laney's written offer complies with Indiana Code section 34–51–4–6(2) as that subsection is interpreted by our supreme court.

 The trial court also interpreted the provisions of subsection (1) of the statute. This provision states that prejudgment interest is not available if:

within one (1) year after a claim is filed in the court, or any longer period determined by the court to be necessary upon a showing of good cause, the party who filed the claim fails to make a written offer of settlement to the party or parties against whom the claim is filed[.]

There is nothing in the statutory language which mandates the trial court's interpretation that a written offer of settlement must be submitted after the filing of a lawsuit. Indeed, if the legislature intended the filing of the claim to be a controlling event, it could have stated that the written offer of settlement must be filed "at or after the filing of the claim and within one (1) year after the claim is filed in the court." We believe that it is more consistent with the intent of the statute to interpret the language "within (1) year after a claim is filed in the court" as defining the deadline for the submission of a written offer of settlement, not as defining whether the settlement offer may be filed before or after the filing of a claim. In other words, the written offer of settlement may be submitted to the defendants before or after the filing of suit, but absent a showing of good cause for delay, it may not be submitted later than one year after the filing of suit. Because Laney filed her written offer of settlement before the deadline of one year after the filing of her claim in the court, her request for prejudgment interest should be honored. Accordingly, we reverse the trial court's order denying such interest.[5]

## CONCLUSION

We affirm the trial court's denial of the Defendants' motion to correct error, and

---

5. We believe that the trial court's reading of *Tincher v. Davidson,* 784 N.E.2d 551 (Ind.Ct. App.2003) is too broad. First, the facts of *Tincher* involve the validity of a written offer of settlement that rejects the defendant's offer "without counter." 784 N.E.2d at 555–56. Second, the *Tincher* court lists the presumed requirements of Indiana Code section 34–51– 4–6 without analyzing the language of subsection (1). Third, in referring to a presumed requirement that a written offer of settlement must be submitted after the filing of a claim to the court, the *Tincher* court adjudicates the validity of the defendant's submission, not the plaintiff's.

we reverse the trial court's order denying prejudgment interest.

Affirmed in part, reversed in part, and remanded.

RILEY, J., and BARNES, J., concur.