ATTORNEYS FOR APPELLANTS
Edward L. Murphy, Jr.
Heidi K. Koeneman
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
Timothy S. Schafer
Timothy S. Schafer, II
Merrillville, Indiana



FILED
Dec 12 2012, 1:39 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 71S03-1201-CT-7

JACQUELINE WISNER, M.D. AND
THE SOUTH BEND CLINIC, L.L.P.,

*Appellants (Defendants below),*

v.

ARCHIE L. LANEY,

*Appellee (Plaintiff below),*

Appeal from the St. Joseph Superior Court, Cause No. 71D04-0708-CT-135
The Honorable Margot Reagan, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 71A03-1007-CT-382

**December 12, 2012**

**David, Justice.**

In this case, the jury returned a verdict for plaintiff in the amount of $1.75 million. The issues presented focus on two separate, but significant, matters.

The first is whether the trial court erred by denying defendants'[1] motion for a new trial based upon the cumulative effect of plaintiff's counsel's alleged unprofessional conduct during the trial. The second issue is whether the trial court erred when it refused to grant plaintiff prejudgment interest.

We affirm the trial court, as did the Court of Appeals, on the denial of defendants' motion for a new trial. Under the circumstances of this case, we defer to the judgment of the trial court. However, this decision does not lesson our dissatisfaction and frustration with the behavior of counsel during the trial, particularly plaintiff's counsel.

Professionalism and civility are not optional behaviors to be displayed only when one is having a good day. Professionalism and civility are the mainstays of our profession and the foundations upon which lawyers practice law. The public expects it. Fellow lawyers expect it. Our profession demands it.

Further, we affirm the trial court's decision to deny the discretionary award of prejudgment interest.

**Facts and Procedural History**

In 2001, Archie Laney was at work when she became dizzy, lightheaded, weak, and had difficulty walking. She was sixty-six-years old. Laney called her daughter, who drove her to the South Bend Clinic where Laney's primary care physician worked. When they arrived, Laney learned that instead of her primary care physician being on duty, Dr. Jacqueline Wisner was on duty that evening. Dr. Wisner conducted an examination consisting of an oral history of Laney's symptoms and an examination of Laney's eyes, ears, lungs, and stomach. Dr. Wisner further conducted an Accu-Check blood glucose test, as well as a hemocue test for anemia. Dr. Wisner observed considerable wax build-up in Laney's ears. Dr. Wisner diagnosed Laney with vertigo due to an inner ear infection, and discharged her with medication for the dizziness and an

---

[1] The record indicates the St. Joseph Superior Court granted a motion for directed verdict and dismissed plaintiff's claims of negligence against the South Bend Clinic, leaving them as a named defendant for purposes of respondeat superior liability to Dr. Wisner. The record further indicates defendants' counsel represented both South Bend Clinic and Dr. Wisner at trial and now on appeal.

2

antibiotic. Dr. Wisner advised Laney the medication could take up to three days to work and instructed Laney to return to her primary care physician if the symptoms continued.

Two days later, Laney called her daughter and told her she could not move her right arm or right leg. Her daughter drove Laney to the Emergency Room at St. Joseph Medical Center. Laney was evaluated that evening and diagnosed as having suffered an ischemic stroke affecting the right side of her body.

The stroke has rendered Laney unable to use her right side, thus Laney now struggles with independent living.

On November 26, 2002, Laney filed a complaint with the St. Joseph Superior Court alleging negligence by Dr. Wisner and The South Bend Clinic on eleven different counts, generally relating to the failed diagnosis of a transient stroke, which later caused Laney to suffer a disabling stroke. The complaint also alleged that Dr. Wisner or the Clinic negligently failed to maintain the medical record from Laney's March 9, 2001 visit to the Clinic.

In 2006, the original complaint was dismissed without prejudice, pending the adjudication of the proposed complaint before the Indiana Department of Insurance, a statutory condition precedent to the filing of the court complaint, which plaintiff had not done here.[2]

On August 6, 2007, Laney filed virtually the same complaint in the St. Joseph Superior Court, alleging negligence by the Clinic and Wisner. In March 2010, a five-day jury trial was held. The jury returned a verdict in favor of Laney and against Dr. Wisner and The South Bend Clinic in the amount of $1.75 million. The trial can best be described as hotly contested, not only as to the disputed facts but also to the rate of objection by the attorneys.

On March 12, 2010, Dr. Wisner and the clinic filed a motion for reduction of the verdict and judgment to the statutory maximum prescribed by the legislature in the amount of $1.25 million. Laney objected to the reduction and also asked for an award of $100,000 in prejudgment interest based on Indiana Code section 34-51-4-7. On March 18, 2010, the trial

---

[2] This Court gave a detailed analysis of the steps taken in medical malpractice cases in <u>Ramsey v. Moore</u>, 959 N.E.2d 246, 250 (Ind. 2012).

court granted the motion to reduce the award and entered judgment in favor of Laney for the amount of $1.25 million, the maximum allowable under Indiana Code section 34-18-14-3, but on April 14, 2010, denied the motion for prejudgment interest.

On April 15, 2010, defendants filed a motion to correct error, requesting a new trial pursuant to Indiana Trial Rules 59(J) and 60(B)(3). Trial Rule 59(J) allows for the court to correct any error it determines to be "prejudicial or harmful." Ind. Trial Rule 59(J). Trial Rule 60(B)(3) allows for the court to relieve a party from a judgment for "fraud . . . , misrepresentation, or other misconduct of an adverse party." T.R. 60(B)(3). Specifically, defendants alleged the following: (1) the trial court erred when it failed to order a mistrial based on the consistent, unprofessional and prejudicial conduct of plaintiff's counsel, which deprived defendants of a fair trial; (2) the trial court erred in allowing plaintiff to argue the missing 2001 record should be attributed to Dr. Wisner; (3) the trial court erred in allowing the testimony of plaintiff's expert witness, Dr. Campbell, after learning he violated a separation of witnesses order; and (4) the court erred in not admonishing plaintiff's counsel for asking voir dire questions that were in violation of the motion in limine order.

The trial court held a hearing and denied defendants' motion to correct error. Defendants appealed the trial court's denial of their motion to correct error, and Laney cross-appealed on the issue of the propriety of the trial court's order denying prejudgment interest. The Court of Appeals affirmed the trial court's order denying the motion to correct error, but reversed the trial court's order denying prejudgment interest. We granted transfer.

## I. Behavior of Laney's Counsel

Dr. Wisner and the clinic contend the behavior of plaintiff's counsel was so unprofessional and so permeated the entire trial that it tainted the proceedings and therefore the cumulative effect was prejudicial enough to warrant a mistrial. We review denial of a Trial Rule 60 motion for abuse of discretion. Outback Steakhouse of Florida, Inc. v. Markley, 856 N.E.2d 65, 72 (Ind. 2006). When the motion is based on Trial Rule 60(B)(3), the appellant must show that (1) misconduct occurred; (2) the misconduct prevented the appellant from fully and fairly presenting the case at trial; and (3) the appellant has a meritorious defense. Id. at 73–74. An abuse of discretion occurs if the trial court's decision was against the logic and effect of the facts

4

and circumstances before the court.  McCullough v. Archbold Ladder Co., 605 N.E.2d 175, 180 (Ind. 1993).

Dr. Wisner and the clinic argue the trial court's finding Laney's counsel in contempt of court on day three of the trial and instructing the jury to disregard certain statements made by Laney's counsel were insufficient remedies that failed to undo the cumulative effect and prejudice caused by such conduct.  Defendants cite to several exchanges in the record that were particularly harmful to such a degree they claim that the harm could not be undone.  The first are instances where Laney's attorney asked specific questions in front of the jury in violation of the trial court's order not to broach a certain subject.

While questioning plaintiff's daughter, plaintiff's counsel asked if Laney was still seeing a particular physician.  This was met with an objection, which was sustained by the trial court.  Immediately following the sustained objection, plaintiff's counsel asked another objectionable question and again the trial court sustained the objection and prohibited the inquiry.

Following an overnight break, counsel resumed questioning plaintiff's daughter along the very same lines that the trial court forbid the day before.  Defendant's counsel objected, and a side bar conference was held where the trial court again found the desired testimony to be irrelevant.  Undeterred by the trial court judge, immediately following the side bar conference, plaintiff's counsel once again went right back to the same line of questioning, drawing yet another objection from defendant's counsel and yet another side bar conference.

At the second side bar conference, the trial court made it clear that this prohibited area of inquiry would not be ventured into again by plaintiff's counsel.  Nonetheless, plaintiff's counsel would pursue the prohibited testimony once again, this time attempting to solicit the prohibited testimony through the plaintiff herself.  Ultimately, the court instructed the jury to disregard the previous questions and not to consider at all the questions that had been asked by plaintiff's counsel on this subject.

On the following day of trial, the trial judge held yet another side bar conference and warned plaintiff's counsel that if he brought up that particular issue again during the next witnesses cross-examination a fine of $500 would be imposed for contempt of court.

5

This example is one of many displays of inappropriate behavior of counsel. There were excessive objections by both counsel, over eighty by the defendant's counsel and over thirty by plaintiff's counsel. While objections are clearly permitted if made in good faith and on sound substantive grounds, repeated objections despite adverse rulings already made by the trial court are not appropriate. However, far more problematic for the trial judge in this case was the unnecessary sparring and outright contemptuous conduct of each attorney directed toward the other.

The record reveals at least five instances where the trial court judge had to admonish the attorneys about their behavior. Furthermore, by any conservative measure there were at least ten instances of questionable behavior by each attorney during the trial. Examples are bountiful throughout the record, but a few examples are highlighted below.

Plaintiff's counsel stated during the trial,

"There was no discussion of the testimony here in court. He's wasting our time, Judge. There's no violation. . . . I've about had it. Cut the scenes in front of the jury. . . . Yeah. Judge, this conduct's got to stop by Mr. Murphy. This has got to stop."

"We don't want to hear about your unsolicited advice. I don't care for your unsolicited advice."

"What are you talking about Murph. . . . You're slipping, Murph."

"No, no. I never said that at all. That's an outright lie."

"Well, I must [be] wrong. I must be wrong for the fifth time, but I think I'm going to show Mr. Murphy has been wrong every time he's objected and I'm going to show later on. . . . He keeps telling me I'm wrong, Judge. The record's going to bear me out. How about this? Loser pays a thousand dollars it wasn't faxed? . . . There's something unprofessional going on here, I'll agree. It's going to come back."

[Tr. at 607, 98, 179, 192, 957, respectively.]

Defendants' counsel stated during the trial,

"Your Honor, I think it's really unfortunate that we start off with a misrepresentation to the Court."

"He's already violated it twice."

6

"Are we going to put up with this?"

"I would prefer you not talk to me. You talk to the Judge. I'll do the same."

"Keep your hands off me. I don't get with this, Judge."

[Tr. At 14, 47, 737, 272, 286, respectively.]

We hope this is not the way attorneys conduct themselves at trial. As specifically found by the trial court judge, "the trial was replete with improper behavior, in this judge's opinion, by <u>both</u> attorneys." The trial court ultimately concluded there was no substantial prejudice resulting from counsel's actions. The trial judge is in the best position to gauge the behavior of the attorneys and whether or not it impacts the jury and in what context. <u>Strack & Van Til, Inc. v. Carter</u>, 803 N.E.2d 666, 677 (Ind. Ct. App. 2004). We cannot conclude this decision was against the logic and facts before the court. Here, defendants failed to show the alleged misconduct prevented them from fully and fairly presenting their case at trial.

The contentious nature of the relationship between plaintiff's and defendants' counsel was evident at the beginning of trial. It apparently began during depositions with defendants' counsel remarking that no competent lawyer would conduct a deposition in the manner plaintiff's counsel was. There were accusations of misrepresentations, lying, and not following the rules. The five-day jury trial was filled with unnecessary comments back and forth between counsel. Plaintiff's counsel did not care for defendants' counsel's unsolicited advice. The attorneys would frequently interrupt each other.

The trial judge even noted one time, "I don't want you both to behave like this and I don't want to embarrass you either because I'm not going to put up with it." On another occasion, the trial judge remarked "I'm just concerned about what the jury is thinking right now. I think you guys are representing the legal profession and I don't think you're helping each other."

Near the end of the trial, the trial judge even directed plaintiff's counsel to apologize to the jury for personal comments about defendants' counsel. Even during the subsequent hearing

7

on the motion to correct error, some four months later, the lawyers could not behave civilly toward each other.[3]

A jury trial is not a free-for-all. It is a civil forum in which advocates represent their clients before a panel of citizens, in front of a judicial officer who is responsible for enforcing the rules of procedure and rules of evidence and assuring the proper behavior of everyone in the courtroom. It is similar to an athletic event with two opposing teams competing and a referee observing to ensure all of the rules are followed. In this trial, both plaintiff's counsel and defendants' counsel committed fouls. Did plaintiff's counsel commit more fouls? Yes. However, defendants' counsel also committed fouls. It is important that attorneys not lose control of their passion for their client or cause and become too emotionally involved and make the cause personal. In such circumstances they risk harm to their client, their reputation, and our profession.

All attorneys in Indiana take an oath and each and every statement in the oath is sacred. One particular statement is, "I will abstain from offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged." Ind. Admission and Discipline Rule 22. Our law schools are trying to train our law students in certain core values of the legal profession, and some of the most important for the future of our profession are collegiality, professionalism and civility. At every trial, indeed at every moment of our practice, we have the opportunity to better our profession. Here, the trial judge presided over the entire trial and had the benefit of observing the overall conduct of both attorneys, not only in the presence of the jury, but outside their presence. The trial judge redirected both counsel on numerous occasions, admonished both counsel on occasions, and even used her contempt powers in an attempt to manage the conduct of counsel and ensure a fair trial. Again, the trial court judge is in the best position to determine when enough is enough and whether or not the behavior of counsel would warrant a new trial.

---

[3] The acrimony between plaintiff's and defendants' counsel did not end at the trial. During the June 2010 hearing on the motion to correct error, the poor behavior began anew. Mr. Murphy accused Mr. Schaffer of bragging about his numerous sanctions having no effect on him, describing his conduct as unprofessional and making gestures during the trial, while Mr. Schaffer called Mr. Murphy an "outright liar" on two occasions.

While we find that the judge did not abuse her discretion in denying the motion to correct error, we nonetheless express our displeasure with the conduct of counsel, particularly that of plaintiff's counsel.

Professionalism and civility must be the foundation of the practice of law. Upon this foundation we lay competency, honesty, dedication to the rule of law, passion, and humility. Every lawyer and every judge is charged with the duty to maintain the respect due to the courts and each other. Our clients and the public expect it. Our profession demands it.

## II. Closing Argument

Defendants also contend that the trial court erred in denying their motion to correct error relating to the closing argument of Laney's counsel. Their argument is that once the clinic was removed as an independent party from the case, any references to alleged misconduct in not producing the medical records should warrant a new trial, when taken together with the previous behavior by Laney's counsel. The relevant portion of plaintiff's closing statement is as follows:

> And what's worse is there's no records. The records are conspicuously missing. The one record on the one day we need just happens to be missing. And we would submit, ladies and gentlemen, if we had that record it would show exactly what was done, and more importantly, exactly what was not done in this case.
>
> Even more ironic is Dr. Wisner had no independent recollection of what happened. Very convenient. And we had no nurses called to try to rebut what we're saying.
>
> So none of the evidence they show was consistent with what their diagnosis was. They gave nothing whatsoever to support it. The one doctor said vertigo earlier today, remember, and it was gone. It was gone by the time she got to Monday. None of the other doctors ever diagnosed it, none of them. All the doctors that saw her at Saint Joe right after Sunday night, none of them found vertigo. None. Isn't that something? It went away. Another coincidence.
>
> Missing record. Coincidence.
>
> The evidence showed there was no treatment for TIA. The evidence will show there was absolutely no tests run to rule out a TIA. And the evidence showed that they failed to hospitalize and all the doctors said that's what should have been done here. Instead, she was sent home without any additional medication, sent out the same way she came in and . . .

9

We believe, as we have stated previously, the trial court was in a better position to determine any prejudicial affect from Laney's counsel's closing statements. We summarily affirm the analysis of the Court of Appeals, noting also that neither Wisner nor the Clinic objected to these statements and waived the issue. Wisner v. Laney, 953 N.E.2d 100, 108 (Ind. Ct. App. 2011).

### III. Testimony of Laney's Expert Witness

Defendants next contend the trial court erred by not granting a new trial due to a violation of the separation of witnesses order. Indiana Rule of Evidence 615 states, "at the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of or discuss testimony with other witnesses." Ind. Evidence Rule 615. We do not disturb a trial court's determination regarding a violation of a separation of witnesses order, absent a showing of a clear abuse of discretion. Jordan v. State, 656 N.E.2d 816, 818 (Ind. 1995). A review of the record reveals that any violation was merely accidental. The alleged violation stems from a chance encounter of Dr. Campbell and Laney, and one merely asking how the other was feeling. At no time did Dr. Campbell ask about their testimony or anything related to trial. The trial court did not abuse its discretion in concluding no impropriety occurred. It is clear to this Court that no violation of separation of witnesses occurred. We are in agreement with the excellent analysis of the Court of Appeals.

### IV. Voir Dire

Defendants further argue the trial court erred in not granting a new trial based on questions by plaintiff's counsel during voir dire, about insurance coverage. We view this as another argument about the misconduct on the part of plaintiff's counsel. We note that plaintiff's counsel asked the prospective jurors whether they worked for ProAssurance Insurance Company or owned stock in that company. There was no objection from defendants' counsel as this question was not inappropriate. Next, plaintiff's counsel asked if the jurors were opposed to injured parties asking for damages. Again, a proper question. Then counsel asked if anyone was employed in the healthcare industry. Again, a proper question. One prospective juror raised their hand and the following interaction took place:

10

[PLAINTIFF'S COUNSEL]  Do you think that would anyway affect you, lean a little toward a healthcare side of this, or you heard stories about lawsuits or have feelings about lawsuits?

[PROSPECTIVE JUROR]     Yes, I have.

[PLAINTIFF'S COUNSEL]  What have you heard?

[PROSPECTIVE JUROR]     I've heard both sides where I don't know how to put this in a general sense.  Specifically, I don't know of any specific suits, but the association with the different doctors and everything else, I've heard things said about how high the – what's it called?  The cost of their insurance and everything else is and how difficult it is for them to be in practice.  This is just general stuff that I've heard.  I don't know anything specific.

Thereafter, a side bar conference was held to discuss the question before voir dire resumed, and defendants' counsel dropped the subject.  Defendants' counsel did not move immediately for a mistrial or argue the jury pool had been tainted.  He did not ask for any specific relief or otherwise give the judge an opportunity to cure any potential defect.  For this reason, we believe this argument was ultimately waived.  Notwithstanding waiver, we would note that "a question regarding a juror's relationship, financial or otherwise, with a specific insurance company on voir dire examination is not error if the question is asked in good faith." Stone v. Stakes, 749 N.E.2d 1277, 1281 (Ind. Ct. App. 2001).  Again, the trial court was most certainly in the best position to make these determinations.  In our review, absent any evidence of bad faith, the trial court's decision to deny a mistrial was not an abuse of discretion.

## V.  Prejudgment Interest

On cross-appeal, plaintiff's counsel challenges the trial court's refusal to grant prejudgment interest.  At issue is the Tort Prejudgment Interest Statute (TPIS).  Ind. Code § 34-51-4.  An award of prejudgment interest is discretionary; accordingly, we review a trial court's ruling on a motion for prejudgment interest for abuse of discretion.  Hupfer v. Miller, 890 N.E.2d 7, 9 (Ind. Ct. App. 2008).  The trial court abuses its discretion when its decision is "clearly against the logic and effect of the facts and circumstances before it." Turner v. State, 953 N.E.2d 1039, 1045 (Ind. 2011).

Laney filed her original complaint with the trial court on November 26, 2002.  She then filed a written settlement offer on April 6, 2005.  In 2006, the original complaint was dismissed

without prejudice. On August 6, 2007, Laney refiled her complaint in the St. Joseph Superior Court. The applicable statutory provision provides that for TPIS to apply, the plaintiffs (1) must make a written offer of settlement to a party against whom the claim is filed within one year of filing the claim in court; (2) the terms of the offer must provide for payment of the settlement offer within sixty days after the offer is accepted; and (3) the amount of the offer does not exceed one and one-third the amount of the judgment awarded. Ind. Code § 34-51-4-6 (2008).

At issue is Laney's April 6, 2005 letter, which states:

> As a follow-up to our deposition of Dr. Wisner, it appears that there is liability against the clinic as well as Dr. Wisner for failure to properly diagnose Mrs. Laney's condition and failing to properly treat her on Mach 9, 2001 resulting in a stroke three (3) days later and substantial and irreversible permanent impairment, specifically a stroke to the left side of her brain with resulting impairment to her right upper and lower extremities as well as impairment to her cognitive functions.

> The clinic, as well as Dr. Wisner, can each be held liable for $250,000.00 plus pre-judgment interest up to four (4) years according to statute and case law for a total amount of $660,000.00. Please be advised my client has authorized me to settle this matter for a structured settlement in the amount of $250,000.00 with a present value of $187,001.00 which is the minimum structured settlement permitted to allow my client to proceed to the Patients' Compensation Fund. I think it would be in the best interest of all parties to amicably resolve this matter without a trial on the merits since it is likely that Mrs. Laney would obtain a substantial verdict in light of her permanent injuries and the conspicuously missing medical records of the clinic regarding March 9, 2001 day in question.

> Would you kindly discuss this matter with your clients as well as their insurance carrier and advise me as to your position within the next thirty (30) days. If we are able to resolve this matter at this time, it will avoid any further inconvenience to Dr .Wisner and eliminate her necessity to travel from Baltimore, Maryland to Indiana for a trial on the merits and thereby avoid any further litigation expense. I will await your response.

Laney argues her letter is clearly an offer to settle within the guidelines of TPIS.

There are two lines of analysis at play in this case. The first is whether this letter met the requirements of Indiana Code section 34-51-4-6. The second is whether prejudgment interest must be awarded if the statutory requirements are met.

Laney's original complaint was filed November 26, 2002 and her settlement letter to Dr. Wisner was written on April 6, 2005. She then dismissed her suit in 2006, only to file it again on August 6, 2007. Laney argues we should not take into consideration the original complaint from 2002 in determining the timeliness of the letter because the lawsuit was dismissed without prejudice, and thus we should act as if the 2002 suit had never been brought at all. By doing this, plaintiff contends the letter of April 6, 2005 properly predated the subsequent lawsuit of 2007. This appears to be one way to attempt to bypass a failure to follow the prejudgment interest statute—dismiss the suit without prejudice, prepare a settlement letter, and file suit anew.

In order to seek prejudgment interest, Indiana Code section 34-51-4-6(1) requires a party to make their written settlement offer within one year of a claim being filed. The trial court determined "within one year" meant the settlement offer could not be made until the claim was filed and that it must be made within one year thereafter. In other words, the trial court found a starting line existed with the filing of a claim and ended one year later at the deadline. We disagree with the trial court's analysis and instead we agree with the Court of Appeals analysis that the one-year requirement "defin[es] the deadline for the submission" of a settlement offer,

> Not . . . whether the settlement offer may be filed before or after the filing of a claim. In other words, the written offer of settlement may be submitted to the defendants before or after the filing of suit, but . . . it may not be submitted later than one year after the filing of suit.

Wisner v. Laney, 953 N.E.2d 100, 113 (Ind. Ct. App. 2011). Thus the Court of Appeals held there was no *starting line*, only a *deadline*, which was one year after the filing of a claim. If the statute is to be interpreted otherwise, it would serve to discourage settlement of lawsuits before a lawsuit is filed. Certainly the legislature did not intend to limit the effective use of the TPIS and settlement negotiations.

This position is further supported by the statute addressing when prejudgment interest begins to accrue. Under Indiana Code section 34-51-4-8(a), prejudgment interest may not exceed forty-eight months and "begins to accrue on the latest of the following dates:

> (1) Fifteen (15) months after the cause of action accrues;
>
> (2) Six (6) months after the claim is filed in court if IC 34-18-8 and IC 34-18-9 do not apply;

13

(3) One hundred eighty (180) days after a medical review panel is formed to review the claim under IC 34-18-10 (or IC 27-12-10 before its repeal).

Ind. Code § 34-51-4-8(a).

If subsection (3) permits prejudgment interest to begin accruing 180 days after the review panel is formed, regardless of the date a complaint is filed in court, then Indiana Code section 34-51-4-8 permits prejudgment interest to accrue before the filing of a complaint.

Thus, we hold today that a written settlement offer must be made within one year following the filing of a claim[4] to be eligible for prejudgment interest. However, a settlement offer can also be made prior to the filing of a lawsuit. We believe this interpretation is broader and more in line with the legislature's intent to facilitate and encourage settlement of claims amicably without legal recourse, but also to give real meaning and effect to the prejudgment interest statute. The trial court's interpretation would potentially foreclose meaningful settlement talks until the filing of a complaint.

In addition to whether or not the settlement letter is timely filed, we must also examine whether the letter identifies the sixty-day settlement requirement period. In other words, does the letter itself comply with the statute. The case most closely on point is Cahoon v. Cummings, 734 N.E.2d 535, 546 (Ind. 2000), where a letter stated the plaintiff was "offering to settle this claim now for $75,001." This Court wrote on the sixty-day requirement,

> The whole point of the statute is to address the cost of delay in payment. Accordingly, an offer to settle "now" is an offer to settle by payment within sixty days. The delay is solely for the benefit of the defendants, and the defendants had the power to accept [Plaintiff's] offer immediately.

Id. at 547. In our view, Laney's offer to "resolve this matter at this time" meets the same threshold as we discussed in Cahoon. The key is to include the time-limiting language in the offer. However, rather than run the risk of a trial court being forced to decide whether a settlement letter did or did not comply with the requirements of Indiana Code section 34-51-4-6, we believe the better practice for lawyers in the future would be to cite the statute in the

---

[4] Indiana Code section 34-51-4-6 also allows for a longer period of time than one year if the trial court determines it necessary and upon a showing of good cause.

settlement letter and make it very clear that the letter is intended to invoke the statute, including the sixty-day settlement window and the possibility of prejudgment interest.

Despite the fact that the letter itself satisfied the statutory requirements as to content, it was untimely sent in this case. The first complaint was filed with the trial court on November 26, 2002. Laney's counsel wrote a settlement letter two years and five months after the original claim was filed. This falls squarely outside the one year window as discussed previously. While plaintiff dismissed that original action, she failed to send a subsequent settlement letter and now attempts to rely on the settlement letter, which would have been untimely filed but for the dismissal of the previous lawsuit. Laney's counsel should have sent a new settlement letter after the dismissal of the first lawsuit, either prior to the filing of the second, or within a year of the filing of the second. Neither was done in this case. The TPIS is not intended to serve as a trap for the unwary. It is designed to put the adverse party on notice of a claim and provide them with an opportunity to engage in meaningful settlement and if they do not do so, they run the risk of incurring the additional obligation of prejudgment interest.

Finally, had the settlement letter been timely sent, we note Laney is not automatically *entitled* to prejudgment interest. TPIS permits the trial court to award prejudgment interest, but does not require an award of prejudgment interest. See Ind. Code § 34-51-4-7 ("*The court may award* prejudgment interest as part of a judgment."); Id. § 34-51-4-8 ("*If the court awards* prejudgment interest, the court shall determine the period during which prejudgment interest accrues.") (emphasis added). Thus, an award of prejudgment interest is committed solely to the discretion of the trial court if the statutory prerequisites are satisfied. This is consistent with the TPIS serving as a tool for the trial court to encourage settlement and incentivize the expeditious resolution to cases.

**Conclusion**

Although plaintiff's counsel's behavior was most troubling, *both* attorneys should have acted in a manner more becoming of our profession. The duty to zealously represent our clients is not a license to be unprofessional. Here the trial court determined that the conduct of counsel did not prevent the jury from rendering a fair and just verdict. The trial court did not abuse its discretion in denying defendants' counsel's request for a new trial. We also affirm the trial court

15

denial of plaintiff's request for prejudgment interest. Laney's 2005 letter did not meet the requirements for awarding of prejudgment interest. The awarding of prejudgment interest is not mandatory and is left to the discretion of the trial court. The trial court was most certainly within its proper discretion in declining such an award.

Dickson, C.J., and Rucker, Massa, and Rush, JJ., concur.